Jenny NIETO, a/k/a Jenny Nieto Soto,
Plaintiff-Appellant,

v.

Bill PENCE, Individually and d/b/a
Import Motor Co., Inc.,
Defendant-Appellee.

No. 76–3983.

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1978.

Rehearing Denied Oct. 20, 1978.

· Miguel Solis, El Paso, Tex., for plaintiff-appellant.

Bill Pence, pro se.

Before GODBOLD, SIMPSON and MOR-GAN, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiff in this case seeks to invoke civil liability under the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–1991, against an automobile dealer who sold her a motor vehicle and did not have actual knowledge, but may have had constructive knowledge, that the odometer reading on the vehicle was less than the number of miles it actually had traveled, and who failed to disclose that the mileage was unknown. The district court held that actual knowledge was required for liability. We conclude that constructive knowledge is sufficient, and reverse.

In 1975 plaintiff purchased in Texas from defendant,[1] used car dealer or dealers, for $600, a 10-year-old pickup truck with an odometer reading of 14,736 miles. Pursuant to the Act, defendant furnished to plaintiff an odometer mileage statement disclosure form. The Act requires that, pursuant to rules promulgated by the Secretary of Transportation, any transferor must give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

15 U.S.C. § 1988(a). The Act also provides,

It shall be a violation of this section for any transferor to violate any rules under this section or to knowingly give a false statement to a transferee in making any disclosure required by such rules.

15 U.S.C. § 1988(b).

Defendant stated on the disclosure form that the odometer reading at the time of sale was 14,736 miles. Defendant did not check the box on the form that says: "I further state that the actual mileage differs from the odometer reading for reasons other than odometer calibration error and that the actual mileage is unknown." Defend-

ant had purchased the truck from another used-car dealer who certified the odometer reading at the time of transfer as 14,290 miles and did not state that the actual mileage was unknown. That dealer had bought the truck from another dealer who had certified the odometer reading at the time of transfer at 14,290 miles and had not stated that the actual mileage was unknown.

Plaintiff sued under 15 U.S.C. § 1989 which provides that:

"Any person who, with intent to defraud, violates any requirement imposed under this chapter shall be liable . . ."

The district court found that defendant had no actual knowledge that the odometer reading differed from the actual mileage and also that defendant did not intend to defraud plaintiff. The court made no finding whether defendant had constructive knowledge that the odometer reading differed from the actual mileage. There was evidence tending to establish that defendant reasonably should have known that the odometer reading differed from the actual mileage. The odometer reading was very low for a ten-year-old truck, and defendant Pence admitted he would be suspicious of an odometer reading of 14,000 miles on a truck that old. Pence had been in the auto business approximately 12 years.

The legislative history indicates that a transferor who lacks actual knowledge that the odometer reading is incorrect may still have a duty to state that the actual mileage is unknown. The Senate Report addressed the very situation this case presents:

[Section 1988] makes it a violation of the title for any person "knowingly" to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that the

---

1. We use the singular "defendant" and the pronoun "he" for simplicity.

mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had at least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of "knowingly" was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark "true mileage unknown" if, in the exercise of reasonable care, he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified.

1972 U.S.Code Cong. & Admin.News pp. 3971–72. Thus defendant had a duty to disclose that the actual mileage was unknown if, in the exercise of reasonable care, he would have had reason to know that the mileage was more than that which the odometer had recorded or the previous owner had certified.

■ The legislative history makes clear that, if defendant had constructive knowledge that the odometer reading was incorrect, he violated § 1989. A separate question is whether defendant can be civilly liable for the violation. Because § 1989 requires intent to defraud, a violation does not automatically lead to civil liability.

■ Several district courts have considered whether a transferor can be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown when he lacked actual knowledge that the odometer

reading was incorrect. One district court has held that a transferor can be found to have had the requisite intent to defraud only if he had actual knowledge that the odometer reading was incorrect. *Mataya v. Behm Motors, Inc.,* 409 F.Supp. 65, 69–70 (E.D.Wis.1976). Other district courts have held that a transferor may have intended to defraud even if he lacked actual knowledge that the odometer reading was incorrect. *Pepp v. Superior Pontiac GMC, Inc.,* 412 F.Supp. 1053, 1055–56 (E.D.La.1976) (intent to defraud may be inferred from gross negligence); *Jones v. Fenton Ford, Inc.,* 427 F.Supp. 1328, 1333–36 (D.Conn.1977) (intent to defraud inferred from recklessness); *Kantorczyk v. New Stanton Auto Auction, Inc.,* 433 F.Supp. 889, 893 (W.D.Pa.1977) (intent to defraud found in reckless disregard); *see Stier v. Park Pontiac, Inc.,* 391 F.Supp. 397 (S.D.W.Va.1975) (court held that transferors with constructive knowledge may be liable without discussing intent to defraud); *Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381, 1387 (D.Neb. 1977) (court held transferor with constructive knowledge liable without discussing intent to defraud).[2]

■ We hold that a transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence.[3]

**2.** District courts have also inferred intent to defraud in cases where the defendant was charged with tampering with a vehicle's odometer yet claimed ignorance. *Delay v. Hearn Ford,* 373 F.Supp. 791 (D.S.C.1974); *see Klein v. Pincus,* 397 F.Supp. 847 (E.D.N.Y.1975). Absent an explanation, a defendant's sole dominion of a vehicle tends to show his responsibility for an altered odometer, and his failure to disclose that the odometer reading is incorrect is evidence of intent to defraud. In tampering cases, however, the inferences courts have

drawn go to show that the defendant tampered with the odometer, and thus the inferences tend to show actual knowledge as well as intent to defraud.

**3.** Our conclusion is rooted in the facts of this case. The Senate Report suggests that auto dealers should adopt business practices reasonably calculated to uncover incorrect odometer readings. Plaintiff presented no evidence that defendant had not adopted such business practices, and defendant offered no evidence that he had. Thus we do not need to decide wheth-

Moreover, unless a violation of the Act can lead to civil liability the Act is toothless. The district court holding there could be no intent to defraud in the absence of actual knowledge countered this obvious argument by noting that the U.S. Attorney General can petition for injunctive relief even when the transferor lacks an intent to defraud. *Mataya, supra,* 409 F.Supp. at 69–70; *see* 15 U.S.C. § 1990. *But see Jones, supra,* 427 F.Supp. at 1333. But such relief, although theoretically available, is unlikely. Private prosecution is needed to make the Act effective.

■ Plaintiff asserts that the court erred in finding that defendant Pence properly did business as Import Motor Co., Inc. and in failing to find that Pence is individually liable in this suit. Plaintiff signed a form titled "Retail Order for a Motor Vehicle" which describes the specific vehicle and gives the terms of and conditions of the so-called "order." The "order" is "accepted" by the seller, presumably by its being initialled. The "order" form was headed, in large type, "Pence Enterprises, Inc." and, on the next line, in smaller but clearly legible type, "Import Motor Co., Inc." The form bears initials described as those of the salesman, and opposite the word "manager's," the initials "B.P.," which we infer are the initials of Pence. In his pro se brief on appeal Pence says that he was employed by Import Motor Co., Inc., as its sales manager. Various correspondence from Pence to the district court is on a letterhead of Import Motor Co., Inc., and signed by Pence as "owner," and the original pleading filed in this case by Import is signed by Pence as "owner." In other instances he has referred to himself as president of Import. At trial Pence testified that he was president of Pence Enterprises, Inc., which did business as Import Motors, Inc., and was sales manager of Import Motors. However, it was not until January 1976, after this suit was filed, that Pence Enterprises, Inc., (or Pence individually, it is not clear which)

filed a certificate of authority to do business under the assumed name of Import Motor Co., Inc., which the parties appear to presume is required by Texas law.

We are unclear whether the court's finding that Pence was properly doing business as Import Motor Co., Inc., was intended to preclude the plaintiff's attempting to enforce a judgment against Pence individually, or whether it would have that effect. Nor are we certain that the evidence adequately supports the conclusion that, under Texas law, Pence was properly doing business as Import Motors. We, therefore, vacate this finding in order that the court may reconsider it and enter new findings and conclusions.

VACATED in part, REVERSED in part and REMANDED.

---

er a court might infer from the failure to adopt such practices that a dealer knew his practices would work to defraud some of the people with whom he would deal or conversely whether a court might infer from the adoption of such practices that a dealer lacked constructive knowledge or intent to defraud.