Kurt WITKOWSKI and Vito Lanzone, Plaintiffs-Appellants,

v.

MACK TRUCKS, INC., a Pennsylvania corporation and Norman Schwartz, Defendants-Appellees.

No. 82–5151.

United States Court of Appeals, Eleventh Circuit.

Aug. 22, 1983.

Sommerfield & Auth, Steven L. Sommerfield, Venice, Fla., for plaintiffs-appellants.

Shackleford, Farrior, Stallings & Evans, Mark P. Buell, Charles P. Schropp, Tampa, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, and RONEY, Circuit Judge, and PITTMAN *, District Judge.

RONEY, Circuit Judge:

Plaintiffs purchased from the defendants a truck-tractor which hauls over-the-road trailers. They brought a three-count action alleging an odometer violation of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C.A. §§ 1981 *et seq.*, a breach of express and implied warranties, and willful fraud for failure to disclose at the time of purchase that the vehicle had been driven in excess of 92,000 miles while each of the two odometers showed a mileage of slightly less than 50,000 miles. Finding neither evidence of intent to defraud nor the existence of express or implied warranties, the dis-

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

trict court granted judgment to the defendants. The findings of the district court not being clearly erroneous, we affirm.

The crux of the argument is that the defendants had actual knowledge of a discrepancy between the odometers and the title certificate which they should have revealed to the purchasers. The facts are somewhat convoluted and involved, but the details are necessary to an understanding of the issues and decision in this case.

Plaintiffs Kurt Witkowski and Vito Lanzone went to Hillside, New Jersey, searching for a particular truck-tractor. Hillside Mack's sales personnel showed them several vehicles with mileages ranging from a low of about 48,000 to a high of 200,000 miles. All the tractors cost about the same. They decided to buy the tractor with a little over 48,000 odometer miles. The cab odometer and the hub odometer attached to a front axle showed approximately 48,000 miles, a different figure than the mileage shown on the title certificate. The title certificates conveying the tractor from Hubler Rentals, Inc., a leasing company which owned the tractor initially, to Mack Financial Corp., which received the vehicle for a security interest, from Mack Financial Corp. to Mack Trucks, and from Mack Trucks to Witkowski showed the truck as having 92,-104 miles on it. Witkowski testified that although he signed the back of the title certificate, where a space for mileage was left blank, he never saw the front of the certificate showing the 92,104 mile figure until his attorney showed it to him the following year. Witkowski stated that defendant Schwartz, the salesman who accompanied him to a New Jersey tag office, gave him the certificate face down to sign and then immediately gave it to someone in the tag office to secure a temporary tag. Schwartz testified that he gave Witkowski the title certificate after the temporary tag was issued.

That discrepancy is the crux of this lawsuit. It was never satisfactorily explained at trial. The parties agreed that the hub odometer could not be tampered with, although the entire unit could be removed and replaced. The plaintiffs introduced no evidence that the cab odometer had been subjected to tampering.

While taking the truck from New Jersey back to Florida and subsequently, the plaintiff experienced a variety of mechanical problems with it. The truck finally broke down, Witkowski was unable to make monthly payments, and Mack Financial eventually repossessed the truck. Witkowski filed suit against Mack Trucks and Norman Schwartz.

The Motor Vehicle Information and Cost Savings Act required the Secretary of Transportation to prescribe rules requiring the transferor of a motor vehicle to disclose to the transferee in writing either the cumulative mileage registered on the odometer, or that the actual mileage is unknown if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled. 15 U.S.C.A. § 1988(a). The regulations in effect at the time of this transfer required a transferor to furnish a written statement containing the following information: (1) the odometer reading at the time of the transfer; (2) the date of the transfer; (3) the name and current address of the transferor and transferee; (4) the identity of the vehicle, including its make, model, and body type, its vehicle identification number, and its last plate number. 49 C.F.R. § 580.4(a) (1976). The transferor was required to include a statement that the actual mileage was unknown if the transferor knew that the odometer readings differed from the number of miles the vehicle had actually traveled, and that the difference was greater than that caused by odometer calibration error. 49 C.F.R. § 580.4(c) (1976).

A transferee can sue for violation of the Act and recover either $1,500 statutory damages or treble actual damages, whichever is greater. 15 U.S.C.A. § 1989(a)(1). To establish a violation of the Act, a plaintiff must prove that a transferor failed to disclose in writing any of the information set out in the foregoing regulations. A violation of the Act or the rules promulgated thereunder does not automatically lead

to civil liability, however, for § 1989 requires a defendant to have violated the Act with an intent to defraud before liability can be imposed. *Nieto v. Pence,* 578 F.2d 640, 642 (5th Cir.1978).

Although defendant argues the Act does not apply to this transaction, citing a regulation found at 49 C.F.R. § 580.5(a)(1) (1976), which exempts transfers of vehicles having a gross weight of more than 16,000 pounds from the odometer disclosure requirements set forth in 49 C.F.R. § 580.4 (1976), one court has held the exemption invalid. *See Lair v. Lewis Service Center,* 428 F.Supp. 778, 781 (D.Neb.1977). As did the district court, we assume without deciding that the Act applies.

■ The failure to prove an intent to defraud defeated plaintiff's action in the district court. After a full trial, the district court found that although plaintiffs had established a discrepancy between the mileage actually showing on the odometers and that recorded on the title certificate by the previous owner, there was no evidence to suggest the discrepancy arose from Mack's intent to defraud. This finding is not clearly erroneous. It appears that the defendant probably violated the Act and regulations by failing to disclose in writing, prior to the transfer of ownership, the discrepancy between the mileage figure recorded on the title certificate and that showing on the odometers. This district court, however, noted that plaintiffs had produced no evidence from which the court could conclude that the odometers, rather than the title certificates, did not show the correct reading. There was no evidence that anyone had tampered with the cab odometer or that it was malfunctioning while the defendant had possession. The concededly tamper-proof hub odometer confirmed its mileage reading.

The plaintiffs seek to buttress their claim by emphasizing that there was no evidence showing the hub odometer was actually on the truck when it arrived at Hillside Mack. Such failure of proof works to the plaintiffs' detriment, not the defendants', because plaintiffs bear the burden of proof.

Given the plaintiffs' stipulation that the hub odometer could not be tampered with, they would have to come forward with some evidence tending to show that defendants added a hub odometer to the truck that showed the same mileage as the cab odometer. Neither is there any evidence that a hub odometer was added and the cab odometer changed to conform to it. This is not a case in which two odometer readings, one high and one low, were taken while the vehicle was in defendant's possession. *See Bryant v. Thomas,* 461 F.Supp. 613 (D.Neb. 1978). The mileage remained substantially the same while defendants had possession of the truck. The delivery receipt recorded the cab odometer mileage as being 47,945 miles on June 25, 1976, the day Mack Trucks received the truck from Hubler.

Based upon evidence that tractors with mileages up to 200,000 miles were selling for about the same price, the district court found there was no difference in value between the truck with 48,000 miles on it and 92,000 miles. Defendants would seem to have gained nothing by virtue of the violation. The record supports the district court's finding that plaintiffs failed to prove defendants acted with intent to defraud.

■ Plaintiffs conceded their common law fraud count stands or falls with their statutory claim. As to the breach of warranty claim, the evidence supports the district court's conclusion that plaintiffs failed to establish the existence of any type of warranty based on the defendants' representations. Both Witkowski and Lanzone signed a security agreement containing a disclaimer of all warranties in boldface type, larger than the other terms, enclosed in a box, and situated immediately above the lines on which they signed. In addition, Witkowski signed a purchase order and a delivery receipt, each of which conspicuously stated the truck was sold "as is." *See* Fla.Stat.Ann. §§ 671.1–201(10), 672.2–316 (West 1966). By their signatures, plaintiffs evidenced a reasonable understanding that defendants' disclaimer of all warranties was a term of the contract, *Knipp v. Weinbaum,*

351 So.2d 1081, 1084–85 (Fla.Dist.Ct.App. 1977), as well as their intent to be bound by the contract's terms. Although plaintiffs testified that Schwartz made oral representations which constituted a warranty, credibility choices were for the trier of fact. That choice, buttressed by plaintiffs' signatures on documents clearly disclaiming all warranties, is not clearly erroneous.

AFFIRMED.

GODBOLD, Chief Judge, dissenting:

The statute and the regulations required Mack Trucks to furnish a written statement containing two pieces of information. First, it was required to state the odometer reading at the time of transfer. Second, if Mack knew that the actual mileage of the vehicle differed from the odometer reading, it was required to state that the mileage was "unknown." [1]

The troublesome problems in this case are twofold: (1) what information is sufficient to trigger "knowledge" by the transferor that odometer mileage and actual mileage are different (thus requiring him to state that the mileage is "unknown")? (2) when a transferor possesses such "knowledge" and fails to state that the mileage is "unknown," what evidence is sufficient to permit an inference that he acted with intent to defraud?

In some circumstances the transferor can know, in the sense of actual knowledge, that there is a discrepancy between odometer and true mileage. The transferor himself may have altered the odometer (there is no evidence that this occurred in the present case), or he can have actual knowledge that it was altered. The previous owner may have told him that the vehicle has traveled more miles than the odometer shows. More often the evidence of the fact of a discrepancy is necessarily circumstantial. Here the circumstantial evidence was that the odometer showed 47,945 while the documents of title received by Mack Trucks from the trustee in bankruptcy showed 92,-104 miles. This was sufficient circumstantial evidence of discrepancy to trigger the requirement that the mileage be certified as "unknown."

In *Nieto v. Pence,* 578 F.2d 640 (5th Cir. 1978), the court dealt with the same two problems that exist in this case, as described above. The district court had made two findings: that the transferor had no actual knowledge of a discrepancy and that the transferor had no intent to defraud. The court sent the case back to the district court to be reconsidered on both grounds. The transferor, a used car dealer, had no actual knowledge that the odometer reading differed from the actual mileage. He acknowledged that a reading of 14,000 miles on a ten-year-old pickup truck was suspicious. The Fifth Circuit held that the dealer had a duty to disclose that the actual mileage was unknown if, in the exercise of reasonable care, he would have had reason to know that the actual mileage was more than that on the odometer. The facts in the present case, tending to show that Mack Trucks, in the exercise of reasonable care, had reason to conclude that a discrepancy existed, are stronger than in *Nieto.* In that case the previous owner had certified the odometer mileage of 14,200. In the present case the information given by the prior owner said, in effect, that the odometer reading was wrong.

If the knowledge required to trigger the statement that the actual mileage is unknown were knowledge that the odometer is in fact incorrect, the certification requirement would be virtually meaningless. The certification of "unknown" mileage is designed to put the purchaser on notice so that he can make an advised decision. He may wish to go ahead with the purchase, or inquire further, or refuse to buy a vehicle whose mileage is unknown. But he is entitled to have the transferor give him the notice—"mileage unknown"—which tells him that the dealer knows or reasonably

---

**1.** Often a vendor would not know what the actual mileage was but might know that the actual mileage differed from the odometer reading. Thus, the requirement of stating that the mileage is "unknown" makes sense.

should know that the odometer reading may depart from reality.

Was there sufficient evidence that a discrepancy existed? The district court did not address this in specific terms. It found that the evidence did *not* show that the odometer reading was *incorrect* or that the odometer had been tampered with. These findings, of course, do not dispose of the question of whether Mack had sufficient notice of a possible discrepancy that it was required to certify mileage as unknown. But the court implied that the evidence of a discrepancy was sufficient, because it referred to "the discrepancy in the mileage readings." I would treat this issue of the existence of a discrepancy as decided by the district court and not clearly erroneous. Or, if we think the finding is not certain enough, we should remand for a finding. While I am not certain, I think the opinion of this court does not disagree with the district judge or with me on this point.

We do disagree on the second problem that we must address, the sufficiency of the evidence to permit an inference that Mack Trucks acted with intent to defraud. All that the district court held was that "no intent to defraud was shown to have *occasioned the discrepancy* in the mileage readings." (emphasis added). This is not the full range of intent to defraud that is involved. If Mack Trucks occasioned the discrepancy, it is obvious that fraudulent intent could be inferred. But that is not all. The discrepancy may have been occasioned by neutral or unknown reasons and for neutral or unknown motives—indeed, that is what seems likely to have happened. The question then is whether an intent to defraud may be inferred from the existence of a discrepancy that is "known" in the statutory sense, plus a failure to certify. In its second holding the *Nieto* court held:

> If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risks of such an occurrence.

578 F.2d at 642. The district court perceived that Mack Trucks would be guilty of fraud if it *caused* the discrepancy. It did not perceive, refer to, or address the possibility that Mack could be guilty of fraud if the discrepancy arose from neutral or unknown reasons. The majority opinion neither recognizes nor addresses this issue. Whether an inference of fraud should be drawn is for the district court. The plaintiff is entitled to have a ruling by the district court on this issue.

I would vacate the decision of the district court and remand for reconsideration under *Nieto.*