Edward JONES, Plaintiff–Appellee, Cross–Appellant,

v.

HANLEY DAWSON CADILLAC COMPANY, Defendant–Appellant, Cross–Appellee.

Nos. 87–1972, 87–2049.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1988.

Decided June 8, 1988.

William H. Kelly, Jr., Mitchell Russell & Kelly, Chicago, Ill., for defendant-appellant, cross-appellee.

Steven Samson, Sussman & Samson, Ltd., Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before WOOD and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

In this appeal, we must determine the standard for imposing civil liability under the Motor Vehicle Information and Cost Savings Act (the Odometer Act), 15 U.S.C. § 1981 *et seq.* The Odometer Act and the regulations promulgated under its authority require a transferor of a vehicle to disclose accurately the vehicle's mileage. Hanley Dawson Cadillac Company (Dawson) appeals from a decision of a magistrate finding Dawson liable under the Odometer Act to Edward Jones, the appellee. Mr. Jones cross-appeals from the magistrate's decision reducing his award of attorneys' fees. For the reasons set forth in the following opinion, we reverse the decision of the magistrate with respect to Dawson's liability. Therefore, we need not reach the merits of Mr. Jones' cross-appeal.[1]

## I

### Facts

In July 1984, Dawson sold Mr. Jones a 1979 Eldorado Biarritz automobile for $10,600. The car's odometer reflected a mileage of 49,016 miles at the time of the sale. A salesman for Dawson filled out an odometer statement, as required by the Odometer Act, certifying that the car's mileage was indeed 49,016. Dawson had purchased the car at the Greater Chicago Auto Auction (Auction) from Tom's Used Cars (Tom's). Tom's delivered the car to Dawson with an odometer mileage statement of 48,964 miles. Tom's had purchased the car at the Auction several months before with a mileage statement of 65,198. The actual mileage of the car at the time Tom's purchased it was in excess of 95,000 miles. Mr. Jones does not allege that Dawson tampered with the odometer.

When Dawson purchased the car from Tom's, it inspected the car at the Auction for mechanical defects, and then reinspected it after it reached Dawson's facility. Dawson regularly inspects new vehicles for safety items such as brakes, headlights and turn signals. Dawson's only customary inspection of the odometer is to determine whether it is operating. Dawson does not usually check underneath the dashboard of a vehicle. Other than the inspection to determine whether the odometer is operating, Dawson relies upon the accuracy of

---

1. Mr. Jones sued both Dawson and Tom's Used Cars (Tom's). Although Tom's was served, it did not appear. Dawson consented to trial by magistrate. After the magistrate entered judgment for Mr. Jones against Dawson, the district judge entered a default judgment against Tom's and dismissed a cross-claim brought by Dawson against Tom's. (Tom's had not, of course, agreed to trial before a magistrate.) Because we reverse the judgment of liability against Dawson, we need not reach the merits of its cross-claim.

the previous owner's odometer statement to verify the true mileage of a vehicle.

Mr. Jones did not discover that the odometer of his Eldorado had been rolled back until he had driven the car for nearly 20,000 miles. Mr. Jones learned of the problem when he received a notice from the state of Michigan, where the car had previously been titled, informing him that the car's odometer statements were inconsistent. Mr. Jones had had the car repaired at least five times since he purchased it, but the mechanics repairing the car had not reported any suspicion that the car's mileage was inaccurate.

Mr. Jones filed an action against Dawson and Tom's alleging liability under the Odometer Act. Tom's defaulted by failing to appear. Dawson and Mr. Jones consented to proceeding before a magistrate and to the entry of judgment by a magistrate. *See* 28 U.S.C. § 636(c). At trial, Mr. Jones offered the testimony of George Alex, an odometer specialist. Mr. Alex testified that he had inspected the vehicle and, after removing the dashboard, had noticed that a lens for one of the colored turn signal indicators was missing. As a result, the turn signal flashed a clear arrow instead of a green arrow. According to Mr. Alex, the turn signal lens can only be dislodged if the dashboard has been removed. Mr. Alex further testified that, after removing the dashboard, he had concluded that the odometer had been tampered with, although he could not be certain that the odometer had been rolled back.

## II

### Opinion of the Magistrate

The magistrate issued an oral ruling and explanation from the bench in which he held that Dawson was liable to Mr. Jones under the Odometer Act. Tr. at 130–39. The magistrate then issued written post-trial findings of facts and conclusions of law. *Jones v. Hanley Dawson Cadillac Co.*, No. 86 C 2098, Post–Trial Findings of Fact, Conclusions of Law and Award of Attorney's Fees (N.D.Ill., Apr. 29, 1987) [hereinafter Findings]; R. 39.

The magistrate noted that an automobile dealer can be liable to a purchaser under the Odometer Act only if the dealer sells a vehicle with an inaccurate mileage statement and if the dealer has acted with an intent to defraud. Findings at 4. According to the magistrate, an intent to defraud exists when a dealer has acted with recklessness, gross negligence, or with constructive knowledge of an inaccuracy based on a failure to exercise reasonable care. The magistrate concluded that Dawson was liable to Mr. Jones under the Odometer Act because "Hanley Dawson did not use reasonable care to ascertain if odometer tampering had occurred on the vehicle in issue prior to sale to plaintiff." *Id.*

The magistrate determined that it was permissible to infer that the colored turn signal lens was missing from the vehicle when it was sold to Mr. Jones. The magistrate noted that the lens could only have been dislodged if the dashboard were removed, and that it was clear that the dashboard had not been removed during Mr. Jones' ownership of the vehicle. The magistrate conceded that "an ordinary mechanic would not be expected to recognize the missing lens as a definite warning signal that there had been odometer tampering." Tr. at 135. Nevertheless, the court determined that there is an "affirmative duty [on automobile dealers] to use reasonable care in order to protect consumers against purchasing automobiles with odometers that have been tampered with." Findings at 5. Concluding that Dawson had failed to use reasonable care, the magistrate said that Dawson should have employed an odometer expert to look for obvious signs of tampering, or it should have trained its mechanics to look for such signs. Tr. at 136.

The magistrate's conclusion that automobile dealers have an affirmative duty to use reasonable care was based on his interpretation of a Senate Report that accompanied the passage of the Odometer Act.[2] According-

2. The relevant portion of the Senate Report relied on by the magistrate is set forth in the text *infra.*

ing to the magistrate, the Senate Report demonstrated that Congress intended that an automobile dealer " 'would have an affirmative duty to mark "true mileage unknown" if in the exercise of reasonable care he had reason to know that the mileage was more than that which the odometer reported or the previous owner had certified.' " *Id.* at 131 (quoting S.Rep. No. 413, 92d Cong., 2d Sess., *reprinted in* 1972 *U.S.Code Cong. & Admin.News* 3960, 3971–72). Thus, the magistrate ruled that a failure to exercise reasonable care was sufficient to constitute an "intent to defraud," and that Dawson was liable under the Odometer Act because it had not exercised reasonable care.

## III

### Analysis

Dawson submits that the magistrate employed an improper standard of liability in finding it liable to Mr. Jones under the Odometer Act. According to Dawson, a car dealer should not have to employ an odometer expert in order to avoid an intent to defraud under the Act. Requiring a car dealer to employ odometer experts "created a standard far beyond the plain language of the Act...." Appellant's Br. at 9. Because an ordinary mechanic would not have known that the vehicle had been tampered with, Dawson contends that it cannot be held liable under the Act.

### A. *Statutory Framework*

■ Section 1988 of the Odometer Act requires a transferor of a car to disclose mileage information to a transferee. That section reads in pertinent part:

(a) Not later than 90 days after October 20, 1972, the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

....

(b) No transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule.

15 U.S.C. § 1988. This section imposes on automobile dealers various responsibilities and affirmative duties with respect to odometer statements. However, nothing in section 1988 grants a private cause of action to individuals aggrieved by a violation of the section. The private right of action in the Odometer Act is found in section 1989. That section reads:

(a) Any person who, *with intent to defraud,* violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

15 U.S.C. § 1989(a) (emphasis supplied). Thus, the mere fact that an automobile dealer has violated the disclosure requirements of the Odometer Act does not necessarily mean that he is civilly liable.[3] The dealer must have acted with an "intent to defraud" in order to be subject to liability from a purchaser. In this case, the magistrate ruled that Dawson had acted with an intent to defraud by failing to exercise reasonable care. Therefore, we must decide whether an automobile dealer's failure to exercise reasonable care can constitute an intent to defraud.

### B. *Intent to Defraud*

■ We begin, as we must, with the words of the statute. The language of a

---

3. The Act also provides for other remedies and sanctions such as injunctive relief (15 U.S.C. § 1990), suits brought by a state to restrain violations (15 U.S.C. § 1990a), civil penalties for the United States (15 U.S.C. § 1990b), and criminal penalties (15 U.S.C. § 1990c). All available state remedies are also preserved. 15 U.S.C. § 1991.

statute controls when that language is sufficiently clear. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976); *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1280, 6 L.Ed.2d 575 (1961). Words in a statute are to be given their plain and ordinary meaning. *United States v. James,* 478 U.S. 597, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). In our view, the plain and ordinary meaning of the phrase "intent to defraud" envisions misconduct more invidious than mere negligence. *See Prosser and Keeton on Torts* § 107, at 740–42 (W. Keeton 5th ed. 1984). Because we must assume that Congress understood the meaning of the words it incorporated into the Odometer Act, we conclude that Congress did not intend negligence to be the basis for civil liability.

Our reading of the statutory language is compatible with the approach taken in an analogous situation by the Supreme Court. In *Ernst & Ernst,* the Supreme Court was asked to determine whether mere negligence was sufficient for liability under Section 10(b) of the Securities Exchange Act of 1934. The plaintiffs argued that Congress intended for negligence to be sufficient even though the statute used the words "manipulative or deceptive device or contrivance." *Ernst & Ernst,* 425 U.S. at 197, 96 S.Ct. at 1383 (quoting 15 U.S.C. § 78j). The Supreme Court rejected the plaintiffs' contention, concluding that "[t]he argument simply ignores the use of the words 'manipulative,' 'device,' and 'contrivance'— terms that make unmistakable a congressional intent to proscribe a type of conduct quite different from negligence." *Id.* at 199, 96 S.Ct. at 1384. In our view, the meaning of the phrase "intent to defraud" is at least as clear as the meaning of the term "manipulative" or the term "device." It hardly connotes simple negligence.

While the plain language of the statute makes resort to the legislative history unnecessary, we do not find that that history casts a cloud on our interpretation. The magistrate relied upon a passage in a Senate Report to conclude that a failure to exercise reasonable care was sufficient to impose liability under the Odometer Act. The relevant passage reads as follows:

> Section 408 makes it a violation of the title for any person "knowingly" to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that the mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had at least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of "knowingly" was incorporated so that the auto dealer with expertise now would have an *affirmative duty* to mark "true mileage unknown" if, *in the exercise of reasonable care,* he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified.

S.Rep. No. 413, 92d Cong., 2d Sess., *reprinted in* 1972 *U.S. Code Cong. & Admin. News,* 3960, 3971–72 (emphasis supplied). We respectfully disagree with the magistrate's interpretation of this passage. The above passage plainly applies only to section 408 of the Act, which was codified as section 1988 of Title 15. Thus, the passage was intended to explicate a violation of the Odometer Act's disclosure provision. Nothing in the excerpt suggests that a failure to exercise reasonable care was intended to be the basis for civil liability. Civil liability is but one of the remedies provided by the Act;[4] it is available not only to redress disclosure violations but other violations of the Odometer Act. Indeed, another paragraph in the Senate Report notes that section 409 of the Odometer

**4.** *See supra* note 3.

Act (codified as section 1989) requires an intent to defraud before civil damages can be imposed:

> Under section 409 any person who "with the intent to defraud" violates any requirement imposed under this title becomes liable in an amount equal to three times the amount of actual damage or $1,500, whichever is greater. Any person undertaking such action who is successful may be accorded costs and reasonable attorney's fees as determined by the court.

S.Rep. No. 413, 92d Cong., 2d Sess., *reprinted in* 1972 *U.S.Code Cong. & Admin. News* 3960, 3972.

Three other courts of appeals have addressed the definition of "intent to defraud" within the meaning of the Odometer Act. We believe that these cases, when read together, support our decision that mere negligence is insufficient to impose civil liability. In *Nieto v. Pence*, 578 F.2d 640 (5th Cir.1978), the defendant sold to the plaintiff a 10–year–old truck with an odometer statement of about 14,000 miles. The court concluded that a vehicle transferor need not have actual knowledge that an odometer reading is erroneous in order to have an intent to defraud. Rather, the court said that a "transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence." *Id.* at 642 (footnote omitted). Read alone, this case arguably suggests, at least in *dicta*, that mere negligence can constitute an intent to defraud. However, soon after *Nieto*, the Fourth Circuit decided *Ryan v. Edwards*, 592 F.2d 756 (4th Cir.1979). The *Ryan* court noted that the Odometer Act was remedial in nature and should be broadly construed. Then, relying on *Nieto*, the court said that "[c]onstructive knowledge, recklessness, or even *gross negligence* in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud under the statute." *Id.* at 762 (emphasis supplied).

Even though it was relying on *Nieto*, the words "even gross negligence" strongly imply that the Fourth Circuit does not envision mere negligence as an intent to defraud.

The most recent circuit to address this issue was the Eighth Circuit in *Tusa v. Omaha Auto Auction Inc.*, 712 F.2d 1248 (8th Cir.1983). The conduct at issue there involved a "failure to investigate in the face of an obvious change on the title." *Id.* at 1254. This conduct is the same as closing one's "eyes to the truth," the conduct at issue in *Nieto*. 578 F.2d at 642. Citing to *Nieto* and *Ryan*, the *Tusa* court determined that an intent to defraud can be inferred "where the seller exhibited gross negligence or a reckless disregard for the truth in preparing odometer disclosure statements." 712 F.2d at 1253. While the court found it unnecessary to rule definitively on the matter because the district court determined that the defendant's conduct evidenced "reckless disregard for the purposes of the Act," *id.* at 1254 n. 5, the panel suggested that simple negligence would not be a sufficient basis upon which to impose civil liability. *Id.* ("The failure to exercise reasonable care might not alone allow a fact finder to infer an intent to defraud.").

■ Because mere negligence cannot be the basis for civil liability under the Odometer Act, we must reverse the magistrate's imposition of liability. It cannot be argued reasonably that Dawson's conduct here was so egregious as to be worse than mere negligence. The magistrate found that an ordinary mechanic would not have readily noticed that the odometer had been tampered with. The only clue that the odometer had been tampered with was the missing turn signal lens, which, in fact, only suggested that the dashboard had been removed. Whether the odometer had been tampered with would have required further investigation. In our view, the record will not support a finding of a level of misconduct more egregious than mere negligence.

### Conclusion

Because the magistrate concluded that Dawson was liable under the Odometer Act

merely because of Dawson's failure to exercise reasonable care, we must reverse that decision. The plain language of section 1989 requires a defendant to act with an intent to defraud. Nothing in the legislative history nor in the case law persuades us that Congress did not mean what it said. Because we have determined that Dawson is not liable to Mr. Jones under the Odometer Act, Mr. Jones is not entitled to a judgment of attorneys' fees from Dawson. Therefore, we have no reason to review Mr. Jones' cross-appeal regarding the amount of those fees. The judgment of the district court is reversed.

REVERSED.