Allan HEFFLER and Cheryl Heffler, h/w

v.

JOE BELLS AUTO SERVICE, Martel
Leasing Limited and John
Kennedy Ford.

Civil Action No. 95–3002.

United States District Court,
E.D. Pennsylvania.

Oct. 28, 1996.

Murray B. Dolfman, Philadelphia, PA, for Plaintiffs.

George H. Knoell, III, Kane, Pugh, Knoell & Driscoll, Norristown, PA, for John Kennedy Ford.

## *MEMORANDUM AND ORDER*

HUTTON, District Judge.

Presently before the Court is defendant John Kennedy Ford's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and plaintiffs' opposition.

## I. *INTRODUCTION*

This is an odometer rollback and fraudulent representation case arising from the sale of a used automobile, a 1992 Ford Taurus, by defendant John Kennedy Ford ("Kennedy Ford") to plaintiffs, Dr. Allan Heffler ("Dr. Heffler") and his wife Cheryl Heffler. On July 13, 1993, the plaintiffs purchased the vehicle from Kennedy Ford, the same day they first saw the vehicle. This vehicle was purchased from Mr. Gus Petratos, the General Manager of Kennedy Ford, who was a close friend and a patient of Dr. Heffler. The plaintiffs claim that the only reason they went to Kennedy Ford to purchase the vehicle was because Mr. Petratos was Dr. Heffler's patient. The plaintiffs had purchased several other vehicles from Kennedy Ford, but discontinued their patronage because of Kennedy Ford's Service Department's purported poor service.[1] On the date of the purchase, the car's odometer read 23,613 miles. The plaintiffs' claim that the car appeared to have a higher mileage than that. Specifically, the plaintiffs point out the damage to the rear of the driver's seat, a permanent impression on the rear seat, as well as wrappers and litter throughout the car. Additionally, Mrs. Heffler complained that she did not like the salesmen's attitude.

The plaintiffs claim that they made warranty repair claims for a broken hose, a module, and the air conditioning. Other problems not covered by warranty also developed. The plaintiffs' contend that these defects demonstrate that the car was defective from the date of their purchase. The Odometer Disclosure statement completed on the date of sale by Kennedy Ford indicated that the odometer reading was 23,613 miles. Also, the plaintiffs contend that the sales manager, Gus Petratos, informed them that the 23,613 miles was indeed correct. This was not, however, the correct mileage.

About one year after the purchase of the vehicle, the United States Department of Transportation, National Highway Traffic Safety Administration, by a letter dated May 5, 1994, notified the plaintiffs that the odometer reading on their vehicle had been altered.

---

1. At the time the plaintiffs purchased the vehicle from Kennedy Ford, they also owned a 1990 Ford Taurus, and had previously owned two other Ford Taurus vehicles.

The plaintiffs contend that Kennedy Ford knew or should have known that the Odometer Disclosure Statement given to the plaintiffs contained a false statement as to the mileage of the vehicle. These acts, the plaintiffs allege, violated the following laws: (1) 15 U.S.C. § 1981–1991 (1972) ("Federal Odometer Act"), *repealed by* Pub.L. 103–272, § 7(b), July 5, 1994, 108 Stat. 1379; (2) 75 Pa.Cons. Stat.Ann. §§ 7131–7139 (1983) ("State Odometer Act"); (3) Pennsylvania law against fraudulent misrepresentation and express warranty; (4) 18 Pa.Cons.Stat.Ann. § 4107 (1972) ("Pennsylvania State Deceptive Practices Act"); and (5) 75 Pa.Cons.Stat.Ann. §§ 1101–1119 (1976) ("Pennsylvania Transfer of Certificate of Title Act"), *repealed by* P.L. 16, No. 8, § 4, June 14, 1983.

· The odometer rollback involves two other defendants, Joe Bells Auto Service ("Joe Bells") and Martel Leasing Limited ("Martel"). On or about June 7, 1993, Joe Bells Auto Service purchased the automobile from Gelco Corporation d/b/a McCullagh Leasing ("Gelco"). At the time of the purchase, the odometer in the automobile read approximately 61,900 miles. Joe Bells received a title certificate from Gelco that certified that the 61,900 miles, to the best of Gelco's knowledge, reflected the actual mileage of the automobile.

Sometime between June 7, 1993 and June 16, 1993, Joe Bells allegedly altered or caused to be altered the odometer mileage on the automobile so that it read approximately 21,900 miles. On or about June 24, 1993, Joe Bells sold the automobile to Martel. Joe Bells prepared and gave to Martel an Odometer Disclosure Statement which stated that the odometer reading was 21,917 miles, certified that the odometer reading, to the best of its knowledge, reflected the actual mileage of the automobile and certified that the odometer was not altered. After Martel acquired possession of the vehicle, Martel transferred the automobile to Kennedy Ford and certified that the 23,535 miles on the odometer represented the correct mileage.

The plaintiffs allege that Kennedy Ford made a false representation of fact as to the true mileage of the automobile with full knowledge of its falsity or with reckless disregard of the truth, and intended future purchasers to rely on the representation of the odometer reading.

Kennedy Ford contends that it had no knowledge, or reason to know, of the previous odometer rollback by co-defendants, Joe Bell and Martel, because Martel had provided a false odometer mileage certificate to Kennedy Ford, without disclosing any other information about the true mileage on the vehicle. Furthermore, Kennedy Ford asserts that an odometer mileage certificate was prepared for plaintiffs in reliance on the mileage information that it had received from Martel. Additionally, Kennedy Ford notes that the plaintiffs and Kennedy Ford have both completed discovery in this case. The plaintiffs have given depositions and answered the defendant's interrogatories. Nevertheless, the defendant contends that the plaintiffs have failed to reveal evidence of any intent to defraud, gross negligence or constructive notice of the prior odometer rollback on the part of Kennedy Ford. Accordingly, the defendant moves this Court to grant it Summary Judgment.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmovant. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. *Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884 (3d Cir.1992).

### B. *Intent To Defraud*

The plaintiffs bring this action pursuant to federal and Pennsylvania state statutes. The Federal Odometer Act, 15 U.S.C. §§ 1981–1991,[2] states in pertinent part as follows:

(a) ... the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled. ...

(b) No transferee shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule.

15 U.S.C. § 1988.[3] "Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable...." 15 U.S.C. § 1989.[4]

The United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, or the Pennsylvania courts have not dealt with these statutes in any extensive analysis. Therefore, this Court will look to other jurisdictions for guidance. Both parties rely on *Nieto v. Pence*, 578 F.2d 640 (5th Cir.1978) for support. In *Nieto*, the plaintiff brought suit against an automobile dealer under the Federal Odometer Act. 578 F.2d at 641. The plaintiff alleged that although the dealer who sold her a vehicle did not have actual knowledge that the odometer reading on the vehicle was less than the number of miles it actually had traveled, the dealer may have had constructive knowledge. *Id.* The Fifth Circuit concluded that constructive knowledge is sufficient for civil lia-

**2.** Sections 1981 to 1991 were repealed by Pub.L. 103–272, § 7(b), July 5, 1994, 108 Stat. 1379. Because all relevant events occurred prior to July 5, 1994, the statute still applies to this matter.

**3.** The Pennsylvania Odometer law provides in pertinent part:

(a) **Odometer mileage statement.**—Prior to or simultaneously with the execution of any ownership transfer document relating to a motor vehicle, each transferor of a motor vehicle shall furnish to the transferee a written statement signed by the transferor containing the following information:

(1) The odometer reading at the time of transfer.

(2) The date of transfer.

(3) The transferor's name and current address.

(4) The transferee's name and current address.

(5) The identity of the vehicle, including its make, year and body type and its complete vehicle identification number.

(6)(i) A certification by the transferor that, to the best of his knowledge, the odometer reading reflects the actual miles or kilometers the vehicle has been driven;

(ii) if the transferor knows that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit of 99,999 miles or kilometers, he shall include a statement to that effect;

(iii) if the transferor knows that the odometer reading differs from the number of miles or kilometers the vehicle has actually traveled and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the odometer reading is not the actual mileage and should not be relied upon.

75 Pa.Cons.Stat.Ann. § 7134.

**4.** In Pennsylvania, "[a] person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable...." 75 Pa.Cons.Stat.Ann. § 7138.

bility under the Act.[5] *Id.; see also Reiff v. Don Rosen Cadillac–BMW, Inc.*, 501 F.Supp. 77, 79 (E.D.Pa.1980) (requisite intent to defraud would permissibly be inferred from a sale in reckless disregard of the odometer's accuracy).

In construing the meaning of the statute [6], the *Nieto* court cited legislative history in concluding that where a transferor lacks actual knowledge as to whether the odometer reading is incorrect, the transferor may still have a duty to state that the actual mileage is unknown. *Id.* The Senate Report stated:

> [Section 1988] makes it a violation of the title for any person "knowingly" to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that the mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of "knowingly" was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark "true mileage unknown" if, in the exercise of reasonable care, he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified.

*Nieto,* 578 F.2d at 642 (quoting 1972 U.S.Code Cong. & Admin.News pp. 3971–72). Therefore, if, in the exercise of reasonable care, the defendant would have had reason to know that the mileage was more than that which the odometer indicated or the previous owner had certified, the defendant has a duty to disclose that the actual mileage was unknown. *Nieto,* 578 F.2d at 642. Additionally, the court found that even where a defendant lacks actual knowledge, the defendant "may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown." *Id.*

■ This Court adopts the *Nieto* courts reasoning, and finds that where a defendant could reasonably conclude, upon inspection of a vehicle, that the mileage on the odometer of the vehicle was incorrect, the defendant has a duty to inform the potential purchaser that the actual mileage of the vehicle is unknown. The legislative history of the Act clearly imposes an affirmative duty on the dealer to adopt practices reasonably designed to uncover incorrect odometer readings.

■ In the instant case, the plaintiffs contend that the defendant should have known that the odometer reading was incorrect due to the wear and tear on the car. Specifically, they point to the wear on the seat, the different color paint, and the subsequent problems the vehicle exhibited. The plaintiffs argue that the condition of the car militates against an entry of summary judgment in favor of defendant Kennedy Ford because there exists a genuine issue as to whether Kennedy Ford should have known that the odometer reading was incorrect.

This Court finds that a genuine issue as to a material fact exists. As this Court discussed above, an automobile dealer has the duty to notify the purchaser that a vehicle's actual mileage is unknown if the condition of the car would alert the dealer that the odometer reading is incorrect. Because the condition of the car is dispositive of whether Kennedy Ford should have informed the

---

**5.** The court noted that evidence existed tending to show that the defendant reasonably should have known that the odometer reading was different from the actual mileage. *Nieto,* 578 F.2d at 641. Specifically, "the odometer reading was very low for a ten-year-old truck, and defendant ... admitted he would be suspicious of an odometer reading of 14,000 miles on a truck that old.

[The defendant] had been in the auto business approximately 12 years." *Id.*

**6.** Textually, the Pennsylvania Statute is an embracement of the Federal Odometer Act. Therefore, due to the lack of precedent, this Court will construe the statutes in the same way.

plaintiffs of the unknown mileage, and possible alteration of the odometer, summary judgment is inappropriate. If the condition of the car at the time Kennedy Ford acquired it from Martel was uncharacteristic of a car with about 23,000 miles, Kennedy Ford had a duty to inform the plaintiffs that the actual mileage was unknown. Kennedy Ford, as a car dealership, obviously possesses greater acumen when evaluating the condition of an automobile than most of its customers. The plaintiffs trusted the salesman and the dealership to conduct a reasonable inspection of the car using their expertise and experience. Drawing all reasonable inferences in favor of the plaintiffs, this Court finds that a reasonable jury could conclude that Kennedy Ford had a duty to disclose that the true mileage of the vehicle was unknown. Consequently, this Court denies Defendant Kennedy Ford's motion for summary judgment on the federal and state odometer claim.

## C. Intentional Misrepresentation or Express Warranty

The plaintiffs also assert state law claims of fraudulent misrepresentation (otherwise known as intentional misrepresentation or fraud). An action under the theory of fraudulent misrepresentation requires: (1) a representation; (2) which is material to the transaction at hand; *(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;* (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994) (emphasis added).

In the instant case, defendant Kennedy Ford knew that plaintiffs wanted a low-mileage car. The defendant represented that the car had only 23,613 miles. The plaintiffs purchased the car based on what was told to them about the car. As such, the representation was material to the transaction because it was an important factor in motivating the plaintiffs to purchase the car. Also, because the plaintiffs' lacked the experience and knowledge about cars that the defendant

possessed, the plaintiffs justifiably relied on defendant's representations. As a result of the defendant's representations, the plaintiffs purchased a car that had many more miles on it than they thought.

Therefore, the sole issue left is whether the representation was made falsely, with knowledge of its falsity or recklessness as to whether it was true or false. This issue calls for the same treatment as the intent to defraud issue above. The condition of the car is again dispositive of whether the defendant acted recklessly as to the truth. If the condition of the car would reasonably reveal that the car's actual mileage was different, the defendant may have acted recklessly by not conducting an inspection and notifying the plaintiffs that the actual mileage was unknown. Based on the facts, a reasonable jury could conclude that Kennedy Ford acted recklessly as to whether the odometer reading represented the actual mileage of the car. Consequently, this Court denies defendant Kennedy Ford's Motion for Summary Judgment on this claim.

## D. Express Warranty Claim

The plaintiffs also assert that the defendant created an express warranty that the car's mileage was only 23,613 miles. The plaintiffs allege that this warranty was breached because the car's actual mileage was over 60,000 miles. The Pennsylvania Commercial Code provides:

(a) General rule.—Express warranties by the seller are created as follows:

(1) *Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain* creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) Formal words or specific intent unnecessary.—It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or as statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty.

13 Pa.Con.Stat.Ann. 2313; *Kenepp v. American Edwards Laboratories,* 859 F.Supp. 809, 817 (E.D.Pa.1994) (emphasis added).

This Court finds that a reasonable jury could conclude that the defendant made an express warranty to the plaintiffs. Specifically, the plaintiffs were looking to purchase a vehicle with low-mileage, and the defendant represented to them that the car that they ultimately purchased only had 23,613 miles on it. By stating that the vehicle had 23,613 miles, the defendant was making an affirmation of fact. Additionally, the plaintiffs would most likely not have purchased the car had they known the true mileage of the vehicle. Thus, the defendant's representation constituted a basis of the bargain. Therefore, summary judgment on this claim is denied.

### E.  *Remaining State Law Claims*

#### 1.  *Claim pursuant to Deceptive Practices Act*

■ The plaintiffs assert a claim pursuant to Pennsylvania Deceptive Practices Act, 18 Pa.Con.Stat.Ann. § 4107, which imposes a criminal penalty. This Court grants the defendant's summary judgment motion on this claim because there are no provisions for civil liability under this Act.

#### 2.  *Claim pursuant to Transfer of Certificate of Title Act*

■ The plaintiffs assert a claim pursuant to Pennsylvania Transfer of Certificate of Title Act, 75 Pa.Con.Stat.Ann. § 1101–19. Section 1112, which related to disclosure of odometer readings and tampering with

odometers, was repealed on June 14, 1983 pursuant to P.L. 16, No. 8, § 4. Consequently, this Court grants defendant's Motion for Summary Judgment on this claim because the applicable section of the Act no longer exists.[7]

An appropriate Order follows.

### *ORDER*

AND NOW, this 24th day of October, 1996, upon consideration of the Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Plaintiffs' opposition thereto, IT IS HEREBY ORDERED that the Defendant's Motion is **GRANTED** in part and **DENIED** in part.

IT IS FURTHER ORDERED that:

(1) Defendant's Motion for Summary Judgment with respect to Plaintiffs' claims pursuant to the Pennsylvania Deceptive Practices Act, 18 Pa.Con.Stat.Ann. § 4107, and the Pennsylvania Transfer of Certificate of Title Act, 75 Pa.Con.Stat.Ann. §§ 1101–1119, is **GRANTED;** and

(2) Defendant's Motion for Summary Judgment with respect to the Plaintiffs' remaining claims is **DENIED.**

---

**7.** Because the factual aspects of the federal claims overlap with elements of the state claims, there is a sufficient relationship between the federal and state claims to support the exercise of this court's pendent jurisdiction pursuant to 28 U.S.C. § 1367. *See Reiff,* 501 F.Supp. at 79.