649 So.2d 916 (1995)
S & S TOYOTA, INC., Appellant/Cross-Appellee,
v.
Carrie KIRBY, Appellee/Cross-Appellant.
No. 94-1156.
District Court of Appeal of Florida, Fifth District.
February 3, 1995.
*917 Kenneth C. Crooks, Dean, Mead, Spielvogel, Goldman & Boyd, Merritt Island, for appellant/cross-appellee.
William H. Ogle, Ledford, Mayfield & Ogle, Ormond Beach, for appellee/cross-appellant.
W. SHARP, Judge.
This is an appeal and cross-appeal from an order granting, in the alternative, a remittitur or new trial with respect to compensatory and punitive damages awarded to Carrie Kirby. Carrie filed suit against S & S Toyota, Inc. (Toyota), after she discovered that the used automobile she purchased from Toyota was not a "low mileage" vehicle as represented. On appeal, Toyota contends that the trial court should have granted its motion for a directed verdict or new trial on the issue of punitive damages. On cross-appeal, Carrie contends that the court erred in granting Toyota's motion for remittitur on damages. Carrie also argues that the court erred in denying her request for treble damages and attorney's fees under the federal odometer law. We agree with this latter argument and reverse this portion of the order. We find no error in the remaining issues, and affirm those rulings.
In February 1990, Carrie purchased a 1984 Datsun 300 ZX from Toyota for over $10,000. Carrie later filed suit against Toyota, claiming that Toyota had misrepresented that the vehicle was a "one owner," low mileage," used car with only 26,000 miles when, in fact, the vehicle had six prior owners and the certificate of title from the owners who sold the vehicle to Toyota noted that the odometer reading was "inaccurate." Carrie sought compensatory damages, treble damages under the federal odometer law, punitive damages and attorney's fees.
Following a two-day trial, the jury found no fraudulent misrepresentation on the part of Toyota but found that Toyota was guilty of a negligent misrepresentation. The jury awarded damages of $15,000 and punitive damages of $35,000.
In response to post-trial motions filed by the parties, the court denied Carrie's request for treble damages, finding that she had waived her claim under the federal odometer law and had elected to proceed solely on her claim for common law fraud. The court also denied Toyota's motions for directed verdict and for new trial but did grant its motion for a remittitur on the issue of compensatory damages and punitive damages. When Carrie declined to accept the remittitur ruling, the order resulted in the granting of a new trial on the issue of damages only.
On appeal, Toyota argues that the evidence was insufficient to support an award of punitive damages and therefore the trial court should have granted its motion for a directed verdict or new trial on this issue. Punitive damages are imposed in order to punish the defendant for extreme wrongdoing and to deter others from engaging in similar conduct. Chrysler Corporation v. Wolmer, 499 So.2d 823 (Fla. 1986). The character of negligence necessary to sustain an award of punitive damages "must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of those rights." Chrysler Corporation, 499 So.2d at 824, quoting Carraway v. Revell, 116 So.2d 16, 20, n. 12. Stated another way, punitive damages are appropriate only when a defendant engages in conduct which is fraudulent, malicious, deliberately *918 violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others. W.R. Grace & Co.-Connecticut v. Waters, 638 So.2d 502 (Fla. 1994); First Interstate Development Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987).
At trial, William Gordon, an automotive expert who examined the vehicle in April 1991, testified on Carrie's behalf. Gordon found that the exterior paint of the vehicle was a quick, over-sprayed enamel finish and that the original paint, found by opening the gasoline access door, was a faded, dull, pinkish color, obviously aged because of exposure to the elements. Gordon found that the trunk area had rust in it, the steering wheel was dull, the driver's seat had deteriorated, and that the vehicle had a variety of mechanical problems. Gordon testified that auto dealers who appraise vehicles for value and who try to determine the vehicle's age and condition are taught to look for these items and that a sales manager or used car manager would be very critical in his appraisal of the car at the time it was being traded. According to Gordon, the problems with this vehicle indicated a mileage and usage far in excess of what was shown on the odometer and that the vehicle probably had at least twice the mileage indicated on the odometer.[1] Based on this mileage, the sales price should have been cut by at least fifty percent.
Carrie herself testified that she gave Toyota power of attorney to handle the title transaction. The certificate of title from the prior owners and sellers of the vehicle to Toyota had "inaccurate" under the odometer reading. There was also evidence that this "inaccurate" reading would have come to the attention of the person processing the documents at Toyota.
The jury was instructed that punitive damages may be awarded "if Toyota's conduct showed reckless indifference to the rights of others as to be equivalent to an intentional violation of those rights." The jury answered "yes" to the following question on the verdict form: "Should punitive damages be accessed against Defendant, Toyota as a result of its conduct?" and awarded $35,000 in punitive damages.
Toyota now argues that there was no special interrogatory finding that it had acted with fraud, actual malice, deliberate violence or oppression or such gross negligence as to indicate a wanton disregard for the rights of others, and therefore the trial court was prohibited from finding support for the award of punitive damages. However, the burden is on Toyota to offer such special verdict forms which would have required the finding that Toyota now complains is lacking. See Hutton v. Sussman, 504 So.2d 1372 (Fla. 3d DCA 1987). The jury was properly instructed with regard to punitive damages and it is assumed that the jury correctly follows the judge's instructions in awarding damages. Hutton. The evidence and the reasonable inferences from the evidence are sufficient for the jury to have concluded that Toyota knew or should have known that the mileage and usage of the car was far in excess of the 26,000 miles that appeared on the odometer. In these circumstances, the trial court was correct in affirming the award of punitive damages. See Hutton (trial court did not err in entering judgment in conformity with verdict awarding punitive damages where it was assumed that the jury properly followed the judge's instruction on punitive damages and the defendant failed to offer special verdict forms which would have required specific findings regarding punitive damages). Cf. American Cyanamid Co. v. Roy, 498 So.2d 859 (Fla. 1986) (award of punitive damages improper where manufacturer of toxic chemical may have been negligent but the evidence showed that the company had a high level of conscientiousness and concern and the evidence did not show an entire lack of care which would raise a presumption of an indifference to the rights of others); Rogers v. Mitzi, 584 So.2d 1092 (Fla.5th DCA 1991), rev. denied, 598 So.2d 77 (Fla. 1992) (no basis for punitive damages where the evidence did not establish that the defendant had made a deliberate and knowing misrepresentation designed to cause and *919 actually did cause detrimental reliance by the plaintiffs).
On cross-appeal, Carrie contends that the trial court erred in denying her claim for treble damages under the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1901-1991. The trial court apparently concluded that the federal odometer law required a specific "intent to defraud" and since Carrie had failed to request a specific interrogatory finding such intent, there was no basis to award damages.
15 U.S.C. § 1988 requires that any person transferring a motor vehicle must disclose the cumulative mileage on the odometer or disclose that the actual mileage is unknown. This section also proscribes the giving of a false statement in making any odometer disclosure. 15 U.S.C. § 1989 provides for civil actions to enforce liability for violation of the odometer disclosure requirements:
(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of 
(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and
(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.
The "intent to defraud" required by section 1989 is not specifically defined in the Act and the courts have developed differing standards in attempting to determine whether a particular violation amounts to an intent to defraud. See Haynes v. Manning 917 F.2d 450 (10th Cir.1990); Huycke v. Greenway, 876 F.2d 94 (11th Cir.1989). A wrongdoer's intent to defraud is ordinarily proved by circumstantial evidence and the courts have been willing to infer an intent to defraud where the seller had actual knowledge that an odometer disclosure statement was false. Tusa v. Omaha Auto Auction, Inc., 712 F.2d 1248 (8th Cir.1983); Nieto v. Pence, 578 F.2d 640 (5th Cir.1978). The majority of courts have also been willing to infer an intent to defraud where the seller exhibited gross negligence or a reckless disregard for the truth in preparing odometer disclosure statements. See Haynes (majority of courts have concluded that reckless disregard is sufficient to prove intent to defraud); Tusa (majority of courts have been willing to infer an intent to defraud in cases of gross negligence or reckless disregard for the truth). See also Huycke (buyer does not have to establish that the seller had actual knowledge of the violation to show an intent to deceive); Ryan v. Edwards, 592 F.2d 756 (4th Cir.1979) (constructive knowledge, recklessness, or even gross negligence in determining or disclosing the actual mileage travelled by vehicle have been held sufficient to support a finding of intent to defraud under the statute); Nieto (intent to defraud may be based on actual or constructive knowledge that the odometer reading differed from the actual mileage); Smith v. Walt Bennett Ford, Inc., 314 Ark. 591, 864 S.W.2d 817 (1993) (actual knowledge is not a requirement under the federal odometer act; constructive knowledge or reckless disregard is sufficient); Denmon v. Nick's Auto Sales of Louisiana, Inc., 537 So.2d 796 (La. App.Ct. 1989) (actual knowledge of the disparity between the odometer and the true mileage is not necessary to establish liability on an experienced used car dealer under the federal odometer act).
This approach is consistent with the legislative history of the odometer law, as explained by the court in Nieto:
The legislative history indicates that a transferor who lacks actual knowledge that the odometer reading is incorrect may still have a duty to state that the actual mileage is unknown. The Senate Report addressed the very situation this case presents:
[Section 1988] makes it a violation of the title for any person `knowingly' to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that *920 the mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had at least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of `knowingly' was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark `true mileage unknown' if, in the exercise of reasonable care, he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified.
1972 U.S.Code Cong. & Admin.News pp. 3971-72. Thus defendant had a duty to disclose that the actual mileage was unknown if, in the exercise of reasonable care, he would have had reason to know that the mileage was more than that which the odometer had recorded or the previous owner had certified.
578 F.2d at 641-642.
Based on this legislative history, the court in Nieto concluded that Congress intended to impose civil liability even in situations in which the seller lacks actual knowledge:
We hold that a transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such occurrence. [footnote omitted]
578 F.2d at 642.
The Florida courts have adopted a similar standard. In Bill Terry's, Inc. v. Atlantic Motor Sales, 409 So.2d 507 (Fla. 1st DCA 1982), the court held:
Absolute certainty that an odometer has turned over is not necessary if the transferor would have discovered the `roll over' in the exercise of reasonable care. Ryan, supra. In Nieto v. Pence, 578 F.2d 640 (5th Cir.1978), the court held that constructive knowledge of an incorrect odometer reading may be sufficient to show intent to defraud. The transferor cannot `close his eyes to the truth.'
From the evidence before it, the jury could infer that Bill Terry's had either actual or constructive knowledge of the car's mileage sufficient to form the requisite `intent to defraud.' The jury also could have concluded that a Bill Terry's salesman forged an odometer statement when the car was originally traded in. When the car was resold, Bill Terry's never made an effort to check its own service records although the four year old car had suspiciously low mileage.
409 So.2d at 509. See also Fort Lauderdale Lincoln Mercury, Inc. v. Fallaro, 616 So.2d 594 (Fla. 4th DCA 1993) (willful and wanton conduct is not the correct standard for the "intent to defraud" under section 1989).
Here, the jury found that there was a misrepresentation on the part of Toyota which was the legal cause of damage to Carrie. The jury was also instructed that it could award punitive damages if Toyota's conduct showed reckless indifference to the rights of others as to be equivalent to an intentional violation of those rights. The jury did award punitive damages and it must be presumed that the jury correctly followed the judge's instructions in awarding punitive damages. See Hutton v. Sussman. Thus, the jury found that there was conduct on the part of Toyota which showed "reckless indifference" to the rights of others. This implicit finding of reckless indifference is sufficient to allow for treble damages and attorney's fees under the federal odometer law. See Tusa (district court was correct in inferring an intent to defraud on the part of an auto action where the auction evidenced a reckless disregard for preparing accurate odometer statement; auto auction ignored an alteration of the mileage figure on the vehicle's title and it made no effort to obtain any previous *921 disclosure statements and did not try to find out if the vehicle had already been driven over 100,000 miles); Ryan (seller was liable for damages under the federal odometer act when he purchased a vehicle assuming that the odometer had "turned over" upon reaching its mechanical limit of 99,999 but marketed the vehicle as low mileage and listed the current mileage on the odometer disclosure statement); Denmon (trial court properly concluded that the defendant violated the federal odometer act where the defendant was an experienced dealer in high-mileage used cars and knew or should have known that the odometer reading which had turned over and showed only 26,000 of the 126,000 actual miles was incorrect or misleading); Bill Terry's, Inc. (auto dealer whose service records indicated that vehicle's odometer had rolled over violated federal odometer law by selling vehicle and certifying only mileage currently listed on the odometer).
Carrie also argues that the trial court erred in granting the motion for remittitur and should have allowed the $15,000 compensatory damage award to stand. The appropriate standard of review of a trial court's order granting a remittitur or a new trial is whether there has been a clear showing of abuse of discretion on the part of the trial court. Rety v. Green, 546 So.2d 410 (Fla. 3d DCA 1989). Carrie has failed to establish that there was evidentiary support for the jury's award of $15,000 and that the trial court abused its discretion in granting a remittitur for compensatory damages. There was likewise no abuse of discretion in remitting the punitive damages to three times the amount of compensatory damages.
For the reasons stated above, we affirm the trial court's determination that a remittitur on compensatory and punitive damages was proper. We also affirm the court's denial of Toyota's motion for directed verdict and new trial with regard to punitive damages. We reverse the portion of the order denying treble damages and attorney's fees to Carrie under the federal odometer law and remand for assessment of these awards. Because the court's improper denial of relief under the federal odometer law may have affected Carrie's decision to reject the remittitur, we direct the trial court to give Carrie a reasonable time to accept the remittitur or be subject to a new trial on damages only.[2]
AFFIRMED in part; REVERSED in part; and REMANDED.
DAUKSCH and PETERSON, JJ., concur.
NOTES
[1] Gordon testified that in the years prior to 1988, cars only had five digit odometers and so when the vehicle had 99,999 miles on it, the odometer would start all over again at zero.
[2] Carrie concedes that an award of both treble damages and punitive damages for the same act would amount to a double recovery and that she would elect the remedy producing the largest award. See Bill Terry's Inc., 409 So.2d at 509. An election of remedies need only be made before judgment is entered. Smith v. Frank Griffin Volkswagen, Inc., 645 So.2d 585 (Fla. 1st DCA 1994); Monco of Orlando, Inc. v. ITT Industrial Credit Corporation, 458 So.2d 332 (Fla. 5th DCA 1984); General Electric Co. v. Atlantic Shores, Inc., 436 So.2d 974 (Fla. 5th DCA 1983).