SHAHOOD, J.
Appellant, Coral Cadillac, Inc., appeals from a final judgment following a jury trial and from an order denying its motion for rehearing/new trial, motion for remittitur, and motion to limit judgment on punitive damages. We affirm as to all issues raised, except the statutory interest rate issue, which we reverse. In affirming the punitive damages award we write only to discuss whether the punitive damage award must be limited to three times the compensatory damage award.
Appellee purchased a 1996 Seville “demo” car, with low mileage, from Coral Cadillac’s showroom and was told that the car had been driven only by the sales manager. He was further told that the car had never been in an accident or repaired, and thus, the car was sold as “factory fresh.” Shortly, after purchasing the car, appellee became aware of various imperfections in the car which led to the conclusion that the car had in fact been in an accident and repaired. Despite repeated denials from Coral Cadillac, appel-lee was able to ascertain that the rear of the car had been in an accident and repaired. After noticing other problems with the car, and the ensuing litigation, appellee prevailed at trial in establishing that Coral Cadillac was guilty of fraudulent misrepresentation, and unconscionable, unfair or deceptive trade practices and was awarded $12,500 in compensatory damages. The jury also found that appellant was entitled to punitive damages in the amount of $133,050 against Coral Cadillac. A final judgment was entered in the amount of $145,550 and the trial court subsequently denied Coral Cadillac’s motion for rehearing/new trial, motion for remittitur and motion to limit judgment on punitive damages.
Coral Cadillac argues that the trial court erred in denying its motion to limit the punitive damage award to three times the compensatory damage award under section 768.73(l)(a), Florida Statutes (1995).
Section 768.73, Florida Statutes (1995), states in pertinent part:
(l)(a) In any civil action based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty, and involving willful, wanton, or gross misconduct, the judgment for the total amount of punitive damages awarded to a claimant may not exceed three times the amount of compensatory damages awarded to each person entitled thereto by the trier of fact, except as provided in paragraph (b).
(Emphasis added). An award exceeding this limitation is presumed to be excessive and the defendant is entitled to remittitur of the amount in excess of the limitation unless the claimant demonstrates to the court by clear and convincing evidence that the award is not excessive in light of the facts and circumstances which were presented to the trier of fact. § 768.73(l)(b), Fla. Stat. (1995).
Coral Cadillac argues that appel-lee’s fraud claim is subject to the statutory cap on punitive damages because it arose out of misconduct in a “commercial transaction.” Appellee, however, argues that *558 the transaction was strictly a “consumer transaction,” thereby taking it out of the limitation on punitive damages. The trial court held that “because it is a consumer as opposed to a commercial transaction they’re entitled to the punitive damages.” We agree.
The issue central to this argument is whether section 768.73 applies to consumer transactions. Because judicial interpretation of Florida law is a purely legal question, it is subject tó de novo review. See Eng’g Contractors Ass’n of S. Fla., Inc. v. Broward County, 789 So.2d 445, 449-50 (Fla. 4th DCA 2001).
In reaching the conclusion that under the facts of this case the sale of the car for individual use arose in the context of a consumer, rather than commercial transaction, we note that there are no cases which expressly answer this question. Neither Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352 (Fla.1994), nor S & S Toyota, Inc. v. Kirby, 649 So.2d 916, 921 (Fla. 5th DCA 1995), relied upon by Coral Cadillac, directly answers this question.
In Alamo Rent-A-Car, an automobile lessee brought an action against Alamo for malicious prosecution based on the lessee’s arrest for failure to return a rental car. The jury awarded the lessee compensatory and punitive damages. Alamo argued that the punitive damages should be limited to no more than three times the amount of compensatory damages under section 768.73(1)(a). In interpreting this section, the court held that the willful and wanton misconduct at issue in that case occurred during the course of the commercial transaction between Alamo and the automobile lessee and was the direct result of that commercial transaction. See 632 So.2d at 1357. Thus, the court concluded that the statute applied to intentional torts arising out of a consumer’s lease of an automobile. See id. at 1357-58.
• In S & S Toyota, an automobile buyer brought an action against the seller for compensatory and punitive damages for a misrepresentation that an automobile was a “low mileage” vehicle. 649 So.2d at 921. Following a jury trial, the court entered judgment for the buyer on the fraud claim, but against the buyer on the federal odometer law claim, and granted a remittitur or new trial with respect to damages. The Fifth District upheld the punitive damage award, held that the buyer was entitled to treble damages under the federal odometer law, and that the trial court did not abuse its discretion in granting remittitur on the compensatory and punitive damage award. See id. The court, in dicta, merely stated that there was no abuse in discretion in remitting the punitive damage award to three times the amount of compensatory damages. See id.
Because section 768.73 fails to define either “commercial transaction” or “consumer transaction” and neither of the above cases addresses the issue of whether the sale of a car to an individual consumer constituted a commercial transaction under the statute, the terms “commercial transaction” and “consumer transaction” should be defined by their plain and ordinary meaning. See Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000) (when a term is undefined by statute, one of the most fundamental tenets of statutory construction requires that we give a statutory term its plain and ordinary meaning). We must conclude that had the legislature meant for “commercial transaction” under section 768.73 to include consumer transactions, it would have amended the statute to so provide. See St. John v. Coisman, 799 So.2d 1110, 1113 n. 3 & n. 5 (Fla. 5th DCA 2001) (under the doctrine of expressio unius est exclusio alterius, the expression of one thing is the exclusion of the other. That is, when a law expressly describes a sitúa *559 tion where something should apply, an inference must be drawn that what is not included by specific reference was intended to be omitted or excluded). It is also a basic tenet of statutory construction that exceptions or provisos should be narrowly and strictly construed. See Samara Dev. Corp. v. Marlow, 556 So.2d 1097, 1100-01 (Fla.1990).
Black’s Law Dictionary defines a “consumer” as “[a] buyer (other than for purposes of resale) of any consumer product. ...” Black’s Law Dictionary 316 (6th ed.1990). A “consumer product” is “[a]ny tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes _” Id. at 316-17. In giving examples of what is considered a consumer transaction, Florida Jurisprudence states that an automobile sale at the wholesale level is not considered a consumer transaction. See 10A Fla. Jur.2d Consumer Borrower and Protections § 153. Logically, it would follow that the sale of an automobile at the retail level would be considered a consumer transaction. “Commercial” is defined as “[r]elates to or is connected with trade and traffic or commerce in general; is occupied with business and commerce.” Black’s Law Dictionary 270 (6th ed.1990). To apply Coral Cadillac’s reasoning, any product bought by a consumer for personal use through commerce, would be considered a commercial transaction. Since most consumer products are distributed through commerce, no product would ever be considered a consumer transaction. In applying a plain meaning interpretation to the statute, it would appear that a transaction which occurs solely for personal use must be considered a consumer transaction, rather than a commercial transaction, and thus, section 768.73(1) should not apply. Thus, the trial court properly refused to limit the punitive damage award.
Lastly, Coral Cadillac correctly argues that the rate of interest on the judgment must be corrected to reflect the 2002 statutory rate of 9%. See Amerace Corp. v. Stallings, 823 So.2d 110, 114 (Fla.2002) (interest does not accrue until the date of the judgment, not the verdict); see also § 55.03, Fla. Stat. (2002). '
Because section 768.73 fails to address the issue as to whether the purchase and sale of an automobile for personal use is a consumer or commercial transaction thereby limiting a punitive damage award to three times the compensatory damage award, we certify the following question to the Florida Supreme Court to be one of great public importance:
IS THE PURCHASE AND SALE OF AN AUTOMOBILE AT THE RETAIL LEVEL FOR THE BUYER’S PERSONAL OR HOUSEHOLD USE A “COMMERCIAL TRANSACTION” AS DEFINED BY SECTION 768.73, FLORIDA STATUTES (1995), THEREBY LIMITING PUNITIVE DAMAGES NOT TO EXCEED THREE TIMES THE AMOUNT OF COMPENSATORY DAMAGES?
AFFIRMED IN PART; REVERSED IN PART AND REMANDED; QUESTION CERTIFIED.
STEVENSON, J., and GEIGER, DWIGHT L., Associate Judge, concur.