David J. DIERSEN, Plaintiff–Appellant,

v.

CHICAGO CAR EXCHANGE,
Defendant–Appellee.

No. 96–1588.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1996.

Decided March 31, 1997.

Rehearing Denied May 13, 1997.

David J. Diersen (argued), Wheaton, IL, for Plaintiff–Appellant.

Christopher V. Langone (argued), Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

David Diersen filed a complaint against the Chicago Car Exchange ("CCE"), an automobile dealership, alleging that the CCE fraudulently furnished him an inaccurate odometer reading when it sold him a 1968 Dodge Charger, in violation of the Vehicle Information and Cost Savings Act ("the Odometer Act" or "the Act"). 49 U.S.C. § 32701 *et seq.* (formerly 15 U.S.C. § 1981 *et seq.*). The Odometer Act requires all persons transferring a motor vehicle to give an accurate, written odometer reading to the purchaser or recipient of the transferred vehicle. Under the Act, those who disclose an inaccurate odometer reading with the intent to defraud are subject to a private cause of action by the transferee and may be held liable for treble damages or $1500, whichever is greater. 49 U.S.C. § 32710. The district court granted the defendant's motion for summary judgment, relying upon a regulation promulgated by the National Highway Traffic Safety Administration ("NHTSA") which purports to exempt vehicles that are at least ten years old (such as the one Diersen purchased from the CCE) from the Act's odometer disclosure requirements. 49 C.F.R. § 580.6(a)(3). Because we hold that the NHTSA exceeded the scope of its statutory authority when it created this exemption for older cars, we reverse that portion of the district court opinion which relies upon the NHTSA regulation as a ground for ruling in favor of the CCE. We

affirm the grant of summary judgment on other grounds.

## I. BACKGROUND

### 1. Diersen's Purchase of the 1968 "Charger R/T" From the CCE

On July 23, 1994, Diersen purchased a 1968 Dodge "Charger R/T" from the CCE for $16,790. The CCE provided Diersen with a written odometer disclosure statement, as required under the Act, stating that the actual mileage of the vehicle was 22,633. A caption at the top of the disclosure document stated:

> Federal (and State law, if applicable) requires that you state the mileage upon transfer of ownership. Failure to complete or provide a false statement may result in fines and/or imprisonment.

The CCE also provided Diersen with an appraisal document stating that the car had 22,600 original miles, as well as a fact sheet stating that the car had 22,600 miles and just one prior owner.

The CCE had purchased the vehicle in question from an individual named Joseph Slaski, who certified to the CCE that the mileage on the car was approximately 22,600 miles and stated that the vehicle had but one prior owner. After acquiring the vehicle but before selling it to Diersen, the CCE inspected the car visually, test-drove the car, and looked at the car's engine. The CCE concluded that the car was in good condition and did not suspect that the odometer reading was inaccurate.

Diersen, after purchasing the Charger, conducted an extensive investigation into the car's title history and discovered that the vehicle had previously been described in title documents as having mileage of 75,000. As part of his investigation, Diersen telephoned two of the car's prior owners, Dennis Sobieski and Robert Dreschbourg (the original owner of the car). Both individuals informed him that the high mileage noted on the title documents was a discrepancy, arising from a clerical error, and asserted that the vehicle was in fact a low-mileage car. Sobieski later gave deposition testimony reiterating what

he initially told the plaintiff: that the 75,000 mile figure was inaccurate and the result of a clerical error.

Before Diersen filed this lawsuit, the CCE offered to have Diersen return the car for a complete refund. Diersen refused this offer and decided instead to sue the CCE for fraud under the Act.

### 2. Procedural History

In response to Diersen's claim of odometer fraud, the CCE brought a motion for summary judgment, which the district court granted on the basis of a regulation, promulgated by the NHTSA, which purported to exempt cars ten years old or older (such as the 1968 Dodge Charger) from the disclosure requirements of the Act. Following the entry of summary judgment on December 27, 1995, Diersen filed a motion to amend his complaint, pursuant to Fed.R.Civ.P. 15(a). He sought leave to amend his complaint so that he could include additional defendants, incorporate new factual material, and advance a new argument that the NHTSA regulation exempting older vehicles was invalid as a matter of law. Diersen's motion to amend was denied January 12, 1996, without a written opinion. Diersen then filed a motion for reconsideration of the court's summary judgment order, arguing that (1) the older-car exemption created by the NHTSA lacked any basis in the Act and was therefore invalid, or *alternatively*, (2) newly discovered facts demonstrated that the CCE knew of the exemption for older cars but waived that exemption, thus admitting that it was bound by the odometer disclosure requirements of the Act. The court denied Diersen's motion to reconsider on February 15, 1996, after both parties had submitted memoranda on the issues raised by Diersen.

### II. ISSUES

The initial and most important question presented in this appeal is whether the district court properly granted summary judgment in favor of the CCE with respect to Diersen's claim of odometer fraud. Diersen argues that the NHTSA lacked statutory authority to exempt older vehicles (such as the one he purchased) from the disclosure requirements of the Act. Thus, according to Diersen, it was erroneous for the district judge to rely upon the NHTSA's regulatory exemption as a basis for granting summary judgment in favor of the defendant. The CCE contends that the NHTSA regulation is a valid exercise of the NHTSA's regulatory authority, and further argues that even if the regulation is deemed *invalid* (i.e., even if the Act applies to the sale of older vehicles) the CCE is entitled to summary judgment because Diersen has failed to come forward with sufficient evidence that the CCE committed odometer fraud.

In addition to challenging the district court's summary judgment order, Diersen assigns as error the denial of both his motion to amend and his motion to reconsider.

### III. DISCUSSION

### 1. The Odometer Act and Accompanying Federal Regulations

The Act provides, in relevant part:

(a) **Written disclosure requirements.**—(1) Under regulations prescribed by the Secretary of Transportation, a person transferring ownership of a motor vehicle shall give the transferee a written disclosure—

(A) of the cumulative mileage registered by the odometer; or

(B) that the mileage is unknown if the transferor knows that the mileage registered by the odometer is incorrect.

(2) A person making a written disclosure required by a regulation prescribed under paragraph (1) of this subsection may not make a false statement in the disclosure.

\* \* \* \* \* \*

(4) The regulations prescribed by the Secretary shall provide the way in which information is disclosed and retained under this section.

49 U.S.C. § 32705. "Motor vehicle" is defined in the Odometer Act as a "vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a

vehicle operated only on a rail line." 49 U.S.C. § 32101(7). The Odometer Act provides for a private cause of action against a person who violates the Act with the "intent to defraud," the violator being liable for three times the actual damages or $1500, whichever is greater. 49 U.S.C. § 32710.

In 1988, the Secretary of Transportation ("Secretary") promulgated, through the NHTSA, a regulation which purported to exempt vehicles "ten years old or older" from the disclosure requirements of the Act. 49 C.F.R. § 580.6(a)(3).[1]

### 2. The NHTSA's Authority to Exempt Older Vehicles from the Disclosure Requirements of the Odometer Act

■ Diersen argues that the NHTSA lacked any statutory authority to promulgate the regulation quoted above, exempting vehicles ten years or older from the Act's odometer disclosure requirements. Diersen did not raise this argument concerning the validity of the NHTSA regulation until after summary judgment had been entered by the district court, at which time he filed a motion to amend his complaint and a motion to reconsider.[2] The general rule in civil cases is that we may not address, for the first time on appeal, an argument which has not been raised at the trial court level. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Amcast Indus. Corp. v. Detrex Corp.,* 2 F.3d 746, 749 (7th Cir. 1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994). As the United States Supreme Court has explained, this rule is "essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). "[W]e should [also] not consider a litigant's issue if that litigant did not give a trial court the first opportunity to decide the issue." *United States v. Payne,* 102 F.3d 289, 293 (7th Cir.

1996). Nevertheless, as the Supreme Court has also emphasized, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the *discretion* of the courts of appeal, to be exercised on the facts of individual cases." *Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877 (quoted in *Sprosty v. Buchler,* 79 F.3d 635, 645 (7th Cir.1996)).

■ We note, first, that Diersen *did* challenge the validity of the exemption for vehicles at least ten years old before the trial court, though belatedly, in his motion to reconsider. The district judge chose not to address this issue, but the parties did brief the question for the benefit of the court, and both Diersen and the CCE have fully briefed and argued the matter before this panel. Thus, there is no danger that any of the litigants will be "surprised on appeal" if we address and resolve this issue. *Hormel,* 312 U.S. at 556, 61 S.Ct. at 721. We also note that the validity of the NHTSA regulation is a question of law, as to which our review is plenary. In addressing this issue, we need not engage in any improper fact-finding to further develop the record, for the only relevant fact is the age of the car sold to Diersen, and the parties agree that the vehicle in question is more than ten years old. As in the case of *Amcast Indus. Corp. v. Detrex Corp.,* we are confronted with a purely legal issue which has been fully briefed and argued by the parties. 2 F.3d at 750 (1993). Thus, "there is no reason to defer its resolution to another case. There will be no better time to resolve the issue than now." *Id.*

■ We begin our analysis of the NHTSA regulation by observing that the text of the Act does not, either explicitly or implicitly, exempt any class of motor vehicles from its odometer disclosure requirements. Nor does the statutory definition of "motor vehicle" provide a basis for the exemption promulgated by the NHTSA. Moreover, Congress has actually circumscribed the extent to which

---

1. The NHTSA also exempted heavy trucks from the odometer disclosure requirements of the Act. Code of Federal Regulations section 580.6(1) exempts vehicles with a "Gross Vehicle Weight Rating, as defined in § 571.3 of this title, of more than 16,000 pounds."

2. These motions are discussed in more detail *infra.*

the Secretary may interpret the Act by limiting the NHTSA's regulatory authority to the promulgation of mere procedural or logistical rules. *See* 49 U.S.C. § 32705(a)(4) ("The regulations prescribed by the Secretary shall provide the *way* in which [the odometer] information is disclosed and retained.") (emphasis added). The CCE argues, without reference to any specific language in the Act, that Congress *expressly* delegated to the Secretary the authority to create the older car exemption. We disagree. Congress directed the Secretary to promulgate rules providing for *procedural* adherence to the Act, but it did not authorize—either explicitly or implicitly—the creation of exemptions to the law.

▮▮▮ The CCE argues that in considering the validity of the NHTSA regulation, we must defer to the NHTSA's interpretation of the Act, because the NHTSA is the agency charged with administering the Act and thus has familiarity and expertise that we do not possess. We do defer to an administrative agency's reasonable *construction* of a statute *if* (as is not the case here) the statute is silent or ambiguous.[3] On the other hand, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Because the text of the Odometer Act does not even suggest—much less explicitly state—a legislative intent to exempt entire classes of vehicles from the disclosure requirements of the Act, we hold that the regulation is invalid and that the district court erred in relying upon this exemption when it granted summary judgment to the CCE.

▮▮▮ Our holding is in accord with a number of decisions by other courts on a closely analogous issue: whether the NHTSA exceeded its statutory authority in promulgating an exemption to the odometer disclosure requirements of the Odometer Act for so-called "heavy trucks" (i.e., trucks with a gross weight in excess of 16,000 pounds). 49 C.F.R. § 580.6(1). A number of courts, including the Court of Appeals for the Ninth Circuit, have held that the NHTSA's "heavy truck" exemption, like the older-car exemption, has no basis in the text of the Odometer Act and represents an invalid exercise of regulatory authority. *Orca Bay Seafoods v. Northwest Truck Sales, Inc.,* 32 F.3d 433 (9th Cir.1994), *W.W. Wallwork, Inc. v. Duchscherer,* 501 N.W.2d 751 (N.D.1993), *Davis v. Dils Motor Co.,* 566 F.Supp. 1360 (S.D.W.Va.1983) and *Lair v. Lewis Serv. Ctr.,* 428 F.Supp. 778 (D.C.Neb.1977). The principle behind these cases also applies to the exemption for older cars. That principle is that "legislative power rests in Congress and ... the will of Congress as unambiguously expressed in a properly enacted statute cannot be amended or altered by regulation.... [A] regulation to the extent it is in direct variance with an unambiguous statutory provision is void." *Davis,* 566 F.Supp. at 1362 (quoting *U.S. v. Maxwell,* 278 F.2d 206, 210 (8th. Cir.1960)).

Our holding that the older-car exemption is invalid also comports with the broad purposes of the Act, which are "to prohibit tampering with motor vehicle odometers; and to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b)(1), (2). There is nothing in this statement of purpose to suggest that the purchasers of older vehicles are less deserving of protection than consumers who buy newer vehicles. The statutory statement of purpose, read concomitantly with the language of the Act (which, to reiterate, does not specify any exemptions) establishes that Congress intended to protect *all* purchasers of motor vehicles from odometer tampering.

Finally, we observe that the Act provides for the levying of civil and criminal fines against violators at the discretion of the

---

**3.** If a "statute is silent or ambiguous with respect to the specific issue [arising out of the administrative rule], the question for the court is whether the agency's answer is based upon a permissible construction of the statute.... [That is,] whether the Administrator's view that [the rule] is appropriate in the context of this particular program is a reasonable one." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 845, 104 S.Ct. 2778, 2782, 2783, 81 L.Ed.2d 694 (1984).

NHTSA. 49 U.S.C. § 32709. In the exercise of prosecutorial discretion, the NHTSA may opt to conserve its resources by declining to prosecute certain classes of vehicles (e.g., those cases involving older vehicles). However, the NHTSA does *not*, without statutory authority, have jurisdiction to tell victims of odometer fraud that they are without a remedy if the car they purchased was ten or more years old. This effectively removes a cause of action that Congress has unambiguously provided to *all* victims of odometer fraud, regardless of the age of the vehicle being purchased. As one member of this panel observed at oral argument, the regulation issued by the NHTSA, in effect, repeals a portion of the statute. There may be good policy reasons for exempting older vehicles from the requirements of the Act,[4] but that determination is legislative in nature and is properly made by Congress, and not by regulatory fiat. *See Orca Bay*, 32 F.3d at 436 ("[R]ationality is not enough. The Secretary need[s] Authority.").

To summarize, we hold that the NHTSA regulation is invalid. This means that the odometer disclosure requirements of the Act apply *regardless of the age of the vehicle*, and thus the defendant may be held liable under the Act *if*, when it sold the 1968 Charger to Diersen, it provided an inaccurate odometer disclosure statement with the intent to defraud Diersen.

### 3. Whether Diersen Has Introduced Sufficient Evidence of Odometer Fraud to Survive Summary Judgment

██ Although we agree with Diersen that the NHTSA regulation is invalid, this does not end our inquiry, for the CCE argues that it is entitled to summary judgment even if the odometer disclosure requirements of the Act do apply to the sale of the 1968

---

**4.** On the other hand, one might argue that the odometer disclosure requirements of the Act are all the more crucial for buyers of older cars, who would like to know whether they are purchasing an old car with low mileage or one which, consistent with its age, has been driven extensively.

**5.** The district court assumed (incorrectly) that the regulatory exemption for older vehicles was valid. Therefore, it did not address the question

---

Dodge Charger. In order to succeed on his claim of odometer fraud, Diersen must demonstrate two essential elements: (1) a violation of the Act's odometer disclosure requirements (i.e., the providing of an inaccurate odometer reading), and (2) an intent to defraud. *Jones v. Hanley Dawson Cadillac*, 848 F.2d 803, 805–6 (7th Cir.1988). Our review of the summary judgment record persuades us that a rational trier of fact could *not* find in Diersen's favor as to the second element (intent to defraud); therefore, we affirm the entry of summary judgment in the defendant's favor.[5]

Diersen claims that the odometer statement provided by the CCE was inaccurate and that the vehicle in question had actually been driven 75,000 miles as opposed to just 22,600. Let us examine this claim. Three of the car's former owners, deposed by Diersen, testified that in their opinion the car was a "low-mileage" vehicle (not driven 75,000 miles as Diersen asserts), and that any indication to the contrary on the title was in error. Dennis Sobieski, one of the prior owners, explained that in his view the 75,000 mile figure which appeared on various title documents had resulted from a clerical error which arose during the time he owned the car:

> [The car] didn't have 75,000 miles. My brother knew the car since it was knew [sic], and the car, other than the body because it sat outside, was a new car. There was never any rattle in the damn thing. It was a nice car ... to cut to the chase here a little bit, this car at that time did not have one third of 75,000 miles on the car. There was a goofup on the title. Did you ever deal with the Secretary of State and try to get some of this stuff straightened out?

---

of whether Diersen had come forward with sufficient evidence of an inaccurate odometer statement and/or fraudulent intent. Nevertheless, it is well-established that "our task [in reviewing a decision to grant summary judgment] is to review de novo the record and the controlling law." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir.1992). Furthermore, *"an appellate court may affirm on any ground that finds support in the record." Id.* n. 1 (emphasis added).

Notwithstanding the testimony of the car's former owners, Diersen steadfastly maintains that the mileage statement provided by the CCE was inaccurate, and he offers in support of this claim an affidavit by Mike Grippo, an automobile appraiser. Grippo avers that he inspected the car and that the "worn condition of the drivers seat" and the "damaged condition of the vehicle's oil pan" were consistent with a vehicle that had been driven "greatly in excess of 22,600 miles." If a jury believed Grippo, it could *perhaps* find that the odometer statement provided by the CCE was erroneous.

However, even if a jury were to agree with the plaintiff that the odometer statement was inaccurate, that is only *one* of the elements necessary to prove odometer fraud under the Act. This court has observed that "the mere fact that an automobile dealer has violated the disclosure requirements of the Odometer Act [by providing an erroneous odometer reading] does not necessarily mean that he is civilly liable. The dealer must have acted with 'an *intent to defraud*' in order to be subject to liability...." *Hanley Dawson Cadillac*, 848 F.2d at 806 (emphasis added). "[M]ere negligence cannot be the basis of civil liability under the Odometer Act." *Id.* Diersen speculates that the CCE "acted with an intent to defraud because it knew or should have known, that the mileage on the 1968 Dodge Charger was suspect." The record reflects that the CCE relied upon the sworn odometer statement provided by Joseph Slaski, the individual from whom the CCE purchased the vehicle. This certification, as well as the fact sheet completed by Slaski, put the mileage at approximately 22,600 miles (the fact sheet also indicated that the car had but one owner). The CCE's own inspection of the vehicle did not suggest that the 22,600 mile figure was inaccurate or erroneous. There is, in short, no evidence to suggest that the CCE knew or suspected that the 22,600 mile figure was mistaken, much less that it intended to defraud Diersen by providing an inaccurate odometer reading.

One could perhaps argue that in light of the car's age, the CCE ought to have conducted further inquiry into the car's mileage instead of relying upon the figure given by Slaski. However, as this court pointed out in *Hanley Dawson Cadillac, supra*, "mere negligence" is by no means the same as "intent to defraud," and without any evidence of fraudulent intent, Diersen cannot prevail on his claim of odometer fraud. Indeed, the plaintiff's allegation of fraudulent or evil intent is belied by the fact that the CCE, in good faith, offered to allow Diersen to return the car for a full refund of his money (an offer which Diersen rejected, preferring to pursue this lawsuit). Because Diersen has not introduced any evidence showing that the CCE acted with an intent to defraud, we hold that the CCE is entitled to summary judgment as a matter of law.

## 4. Procedural Issues Raised by Diersen

### A. Denial of Diersen's Motion to Amend

■ Following the entry of summary judgment, Diersen sought to amend his complaint, pursuant to Fed.R.Civ.P. 15(a), so that he could: (1) add new defendants (two prior owners of the car as well as two CCE employees who sold him the car), (2) add a new count alleging that the NHTSA exemption for older cars was invalid, and (3) include facts to show that even if the regulatory exemption was valid, the defendants waived that exemption.[6] The district court denied Diersen's motion in a one-line minute order, without stating its reasons on the record. "We review such a denial by a district judge for an abuse of discretion." *Amendola*, 907 F.2d at 764. Indeed, this court has recognized that the district judge is "particularly well suited to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first-hand the party's diligence or lack thereof." *Id.*

---

**6.** We note that Diersen did not follow the proper procedure in filing his motion to amend. "In this circuit, after a judgment has been entered, a party must have the judgment reopened pursuant to Federal Rule of Civil Procedure 59(e) or 60(b) and then request leave to amend pursuant to Rule 15(a)." *Amendola v. Bayer*, 907 F.2d 760, 765 n. 4 (7th Cir.1990). Diersen did not attempt to have the judgment reopened prior to filing his motion to amend.

Rule 15(a) embodies a "liberal" approach to pleading and states that "leave [to amend] shall be freely granted when justice so requires," but this court has recognized that "justice may require something less in post-judgment situations than in pre-judgment situations." *Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1196 (7th Cir.1985). Specifically, we have stated that "*delay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for a district court not to permit an amendment.*" *Id.* Diersen knew from the beginning of the litigation that there were potential defendants other than the CCE and could have proposed adding these defendants at an earlier juncture. Similarly, he was (or ought to have been) aware of the issues that he sought to raise in his amended complaint, to wit, the validity of the NHTSA exemption for older cars and the question of whether the CCE waived that exemption.[7] In short, the amendments proposed by Diersen *after the judgment was entered* could and should have been suggested by him much earlier in the litigation.[8] Moreover, had the judge permitted these amendments after the entry of summary judgment, we note that the litigation would have been prolonged and the "public interest in prompt resolution of legal disputes" impaired. *Amendola*, 907 F.2d at 764. For all of these reasons, we conclude that the trial judge did not abuse her discretion in denying the motion to amend (although we add that in the future it would be helpful to this reviewing court if the district judge would state, on the record, his or her reasons for denying a motion to amend).

### B. Denial of Diersen's Motion to Reconsider

Diersen also argues that the district judge erred by denying his motion to reconsider, in which he argued that (1) the regulatory exemption for older cars was invalid, or *alternatively*, (2) new evidence showed that the CCE had *waived* the exemption and effectively admitted that it was bound by the disclosure requirements of the Act. For the reasons discussed above, we agree with the first argument set forth in Diersen's motion to reconsider, even though the district judge chose not to address the parties' arguments on this matter. In light of our holding that the regulatory exemption is invalid, we need not discuss Diersen's alternative arguments concerning waiver of the older-car exemption.[9] Diersen's waiver argument is moot because, obviously, one cannot waive a regulatory exemption that has no force as a matter of law.

### IV. CONCLUSION

We hold that the NHTSA was without statutory authority to exempt motor vehicles ten years old or older from the odometer disclosure requirements of the Act. We therefore reverse the district court to the extent that it relied upon this invalid regulatory exemption as a basis for ruling in the CCE's favor. Nevertheless, we agree with the CCE that a rational jury could not find in Diersen's favor with respect to the CCE's alleged intent to defraud, a crucial element of

---

**7.** As discussed below, the "waiver" argument is moot in light of our holding, *supra*, that the NHTSA regulation was invalid. One cannot waive a provision that is invalid as a matter of law.

**8.** The only explanation Diersen offered for not proposing these amendments sooner was the alleged unwillingness of his former attorneys to name any defendant other than the CCE. We do not find this a compelling excuse. So long as these former attorneys were duly engaged by Diersen, they were his agents and he must be bound by their decisions concerning trial strategy, whether those decisions be good, bad, or indifferent. *See, e.g., United States v. 7108 W. Grand Ave., Chicago, Ill.*, 15 F.3d 632, 634 (7th

Cir.1994), *cert. denied sub nom. Flores v. United States*, 512 U.S. 1212, 114 S.Ct. 2691, 129 L.Ed.2d 822 (1994).

**9.** Diersen mistakenly argues that he was justified in not introducing the alleged new evidence on the waiver issue earlier because of his attorney's alleged incompetence. We reject this argument. "[A]ttorney's errors and misconduct are attributed to his clients. The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds." *7108 W. Grand Ave.*, 15 F.3d at 634. "Malpractice, gross or otherwise, may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary." *Id.* at 633.

Diersen's claim. Because there is insufficient evidence upon which to base a finding of odometer fraud, the grant of summary judgment in the defendant's favor is

AFFIRMED.

