**HECTOR VILLAFANE, Plaintiff**

**v.**

**LAWRENCE BRYAN, Administrator and the GOVERNMENT
EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF
THE VIRGIN ISLANDS, Defendant**

Civil No. 257/1995

Territorial Court of the Virgin Islands

Division of St. Croix

May 23, 2001

KEVIN RAMES, ESQ., *for Petioner*

TERRILYN SMOCK, ESQ., *for Defendants*

ROSS, *Judge*

.

## MEMORANDUM OPINION

(May 23, 2001)

THIS MATTER is before the Court on a petition for writ of review of the Board of Trustees of the Government Employees Retirement System's ("the Board") March 11, 1995 decision. Because this Court finds that GERS erroneously concluded as a matter of law that Petitioner Hector Villafane ("Villafane") was not eligible for enhanced early retirement, the Board's decision denying Villafane enhanced early retirement benefits under Act No. 5226 will be reversed and remanded for the Board to grant Villafane his enhanced early retirement benefits retroactive to December 31, 1990.

### FACTS

Villafane born June 4, 1949 had been credited for over twenty years of service to Virgin Islands Water and Power Authority ("WAPA") when he retired in 1990. From November 28, 1966 until his resignation on December 31, 1990, he worked in the area of transmission and distribution; working on the installation of pole hardware and such auxiliary equipment as transformers, lighting arresters, switches, fuses and insulators.[1] In 1966, he commenced as a "GROUNDMAN/ APPRENTICE LINEMAN". After a year, he was promoted to "LINEMAN 3RD CLASS," moved up to "LINEMAN 2ND CLASS," and eventually to "LINEMAN 1ST CLASS" — altogether serving a total of four and one-half years as a lineman. He then went on to work as "HEAVY EQUIPMENT OPERATOR," beginning on May 30, 1971 and ending January 1, 1978, for a period of six years and seven months. Finally, he served as "MOBILE EQUIPMENT OPERATOR" for twelve years and seven months until his retirement.

Having retired after more than twenty-three years of service at WAPA, Villafane applied to the Board for an enhanced early retirement annuity, asserting that he had met all the prerequisites for enhanced early retirement under Act No. 5226, the Virgin Islands Government Employees Retirement System Act ("the Act"). His application was supported by certification of the

---

[1] Pursuant to WAPA Letter dated July 10, 1991 directed to GERS, transmitting Villafane's employment history.

151

Executive Director of WAPA[2] that he had worked for over five (5) years "continuously and directly with transformers, eye reclosers and regulators that contain polychlorinated biphenyls ("PCB") and transformer oils while power lines are energized all day." Even though GERS had never previously questioned the veracity of WAPA's certification,[3] on October 1, 1991 in denying Villafane's application, GERS's Administrator novelistically[4] based the decision on the contention that Villafane's position as "HEAVY EQUIPMENT OPERATOR" did not qualify him under the Act because there was no proof of direct and continuous

---

[2] Historical note on series of certifications by Bruno-Vega, WAPA's Executive Director: There were a total of three certifications. *1) First certification* dated March 20, 1991 stated in pertinent part: "...the position of *heavy equipment operator* in the line department is a *position that is directly and continuously exposed to PCB* and transformer oils, and these are substances defined by the Second Annual Report on carcinogens published by the Public Health Service..." In a letter dated June 28, 1991, GERS denied Villafane's application premised upon the erroneous assertion that in order to retire pursuant to Act 5226, you are required to have twenty (20) years of credited service in an eligible position. *2) Second certification* dated July 31, 1991, was sent following the denial, to establish that Villafane nonetheless qualified because he had also been *continuously and directly exposed to PCB in his Mobile Equipment Operator* position in the line department. *3) Third certification* dated June 28, 1991 certifies that even though Villafane worked for 4 1/2 years as a lineman he continued to perform lineman duties in his later positions with WAPA.

[3] Pursuant to GERS letter dated June 28, 1991 denial of benefits was not based upon inadequacy of certification, but upon the assertion that "he did not have the requisite twenty (20) years in an eligible position as defined by Act 5226. And also, GRS letter dated July 12, 1991 wherein Administrator Goodwin stated that GERS was unable to revert the decision based solely upon WAPA's letter submitting information that in his position as Mobile Operator Villafane was similarly exposed as when he was Heavy Equipment Operator. Administrator Goodwin further stated that WAPA's "department head needed to certify the position as it had been done for Heavy Equipment Operator" in order to comply with the requirements of the Act.

[4] Prior to this decision GERS had never contested nor rejected WAPA's certification of Villafane. However, relying basically upon their consultant Rosie Mackays' opinion dated Sept. 30, 1991 that Villafane was not eligible under the Act, GERS asserted for the first time that Villafane did not qualify because WAPA's certification did not conform to GERS' Rules and Regulations (702-5-D) requiring further specificity than statement that contact was "continuous" and that Villafane's contact with PCB could not be direct because the transformers he was responsible for hanging (in his position with WAPA) were sealed units.

152

contact with "PCB," since "transformers are sealed units and as such offer no exposure to the substance being scrutinized."[5] Villafane appealed the Administrator's decision to the Board of Trustees for GERS. Upon further investigation, pending the appeal, WAPA submitted an additional certification by the Executive Director that Villafane had actually continued to perform the functions of lineman after his position as official lineman had terminated.[6] Certification was premised on information[7] providing that because WAPA often required Villafane's expertise, acquired during his four and one-half years of service as a lineman,[8] Villafane continued to perform sufficient lineman duties throughout the duration of his service as an operator so as to qualify him as a lineman under the Act.[9] Having heard arguments in November 1992, the Board issued its Decision and Order affirming the Administrator's decision that Villafane did not qualify under the Act. Pursuant to Villafane's petition for a writ of review, this Court issued an order dated April 25, 1994, vacating the decision and remanding the case to GERS for specific findings consistent with its opinion. Memorandum Opinion dated April 24, 1994, Civil No. 1264/92 (Terr. Ct., Division of St. Croix, 1995). This Court primarily found that the record was devoid of substantial evidence upon which the Board could base its decision that Villafane was not an "eligible employee" working with hazardous substances for twenty (20) years or more pursuant to the provision of the

---

[5] According to GERS Administrator, George E. Goodwin's final decision dated October 1, 1991.

[6] By Certification of Executive Director Bruno-Vega dated April 14, 1992, which stated in pertinent part: "Mr. Villafane performed the functions of Lineman for more than four and one half (4 1/2) years though he did not hold the title of Lineman.

[7] WAPA Director Rodriquez' Inter-office Memorandum dated March 27, 1992 directed to Executive Director stating essentially "because (Villafane) had been a lineman for approximately 4 1/2 years, whenever the Line Department was short of linemen, Mr. Villafane would fill in as one even though he was an operator. Mr. Villafane would be assigned to construction and maintenance crews at time for weeks and months. These tour of duties over the last fifteen (15) years.

[8] Note, pursuant to first GERS letter dated June 28, 1991, Villafane's service for 4 1/2 years as a lineman was undisputed, in fact GERS had initially considered the year in its calculation when it asserted that Villafane had not met the 20 year requirement.

[9] Supported by Testimony of Villafane, WAPA Director Rodriquez and WAPA Supervisor Pinero during hearing of November 1992.

Act,[10] and held therefore that Villafane did qualify for enhanced early retirement benefits under the Act.[11] Solely to clear the record, since the court ultimately found that Villafane qualified regardless of whether the years were included or not, the court directed the Board to reconsider and clarify on remand whether Villafane's additional years of performing lineman duties had been considered in its final decision.[12] On March 11, 1995, GERS again issued an order denying Villafane enhanced early retirement benefits on the premise that since Villafane did not meet the eligibility requirements while he held the positions of Heavy Equipment Operator and Mobile Equipment Operator, it is axiomatic that he does not qualify under the twenty (20) years requirement of 3 V.I.C. § 705 (d).[13] The Board reached its decision relying on an erroneous interpretation of the Act and by disregarding: 1) all of WAPA's certifications,[14] 2) this Court's Opinion that Villafane qualified and that GERS' October 1991 decision was not supported by substantial evidence in the record, and 3) Dr. Coulston's testimony on the dangers of PCB asserting that it was premised on disputed facts.[15] Villafane files the present action

---

[10] Memorandum Opinion dated April 24, 1994, pp 10 - 14. In essence, because the record reflects that the certifications for heavy equipment operator and mobile operator had not been rejected in Administrator Goodwin's letter dated July 12, 1991, p. 11.

[11] *Id.* at 12: "The addition of his years of service as a lineman, (whether only taking into consideration the actual [four and one half] years he served in that official capacity or the additional 2-3 years of substitutions as lineman) the grand total would be in excess of twenty (20) years. On that basis Villafane would qualify for enhanced early retirement benefits."

[12] Memorandum Opinion dated April 25, 1994, p. 10. Since the record failed to reflect whether GERS had considered the additional time in determining whether he had met the five-year lineman requirement. In light of the fact, that the information and additional certification had been supplemented pending the appeal of Administrator Goodwin's October 1, 1991 decision.

[13] Pursuant to GERS's Board of Trustees Memorandum Opinion dated March 11, 1995, p. 11.

[14] *Id.* at 9-10. Contending, "Villafane did not work continuously and directly with carcinogens for a period of at least five (5) years," despite WAPA's certifications to the contrary.

[15] *Id.* at 9-10. Contending that Assistant Line Superintendent, Sixto Pinero Navarro testified that Villafane was not a lineman while he held the position of Lineman and transferred to Heavy Equipment Operator. Contesting direct contact of PCB, alleging that Villafane used the boom to hang the transformers, containing PCB. Note, however, that during his testimony, on redirect, although Pinero Navarro

154

asserting that GERS' decision must be overturned for failure to comply with this Court's April 25, 1994 Order and that he should be granted his enhanced early retirement benefits retroactive to December 31, 1990.

## DISCUSSION

### A. Standard of Review

This Court granted Villafane's petition for a writ of review, after having preliminarily determined that the Board appeared to have exercised its function erroneously in denying Villafane early retirement benefits, pursuant to 5 V.I.C. § 1421 which states:

> Any party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter and rules of court. Upon the review, the court may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed.

and based upon 5 V.I.C. § 1422 which further elaborates on the grounds for granting a petition for writ of review:

> The writ of review shall be allowed in all cases where there is no appeal or other plain, speedy, and adequate remedy, and where the officer, board, commission, authority, or tribunal in the exercise of his or its functions appears to have exercised such functions erroneously, or to have exceeded his or its jurisdiction, to the injury of some substantial right of the plaintiff.

■ This statutory scheme has been interpreted as a broadly drafted remedial device "enabling parties aggrieved by an administrative or ministerial decision to seek judicial review of that determination." *Equity Inv. Corp. v. Government of Virgin Islands,* 19 V.I. 180, 182 (D.V.I.

---

testified that: "He (Villafane) couldn't be a lineman, because he was assigned already to Heavy duty Operator, he clarified in response to further questioning by Attorney Smock, "And he would not do line work?" Pinero-Navarro explained: "No, because lineman work, a man dat go out on the pole, climb the pole. Which is a different thing to a groundman, which he could do, if he dey working with a foreman and a foreman tell him, "Villafane, come and open this transformer with me," he could do it." Attorney Smock then asked, "Is that lineman work?" Pinero answered, "Well, is a lineman work yes, is a lineman work.

1982) (*citing Simmon v. Christian,* 1975 U.S. Dist. LEXIS 15607, 12 V.I. 307, 309 (D.V.I. 1975)). The reviewing court, pursuant to 5 V.I.C. § 1423, has the "power to affirm, modify, reverse, or annul the decision or determination reviewed, and if necessary, to award restitution to the plaintiff, or, by mandate, direct the officer, board, commission, authority, or tribunal to proceed in the matter reviewed according to its decision." These words authorize the general review of decisions of administrative agencies, and while they have been interpreted as incorporating the substantial evidence rule of administrative law, [*see, e.g., Donastorg v. Government Employees' Serv. Comm'n,* 6 V.I. 368, 371, 285 F. Supp. 111, 112 (D.V.I. 1968) *and Samuel v. Government Employees Service Commission,* 1976 U.S. Dist. LEXIS 16103, 12 V.I. 581 (D.C.V.I. 1976) (wherein the court held that when reviewing factual determinations of GERS courts will determine whether the agency's findings are supported by substantial evidence)], the authorized scope of review is expansive. *Government of the V.I. v. United Industrial Workers, N.A.,* 38 V.I. 170, 987 F. Supp. 439 (D.V.I. App. Div. 1997), *aff'd* 40 V.I. 489, 169 F.3d 172 (3d Cir. 1999). *See also Government of the V.I. v. United Industrial Workers,* 40 V.I. 489 (3d Cir. 1999).

In reviewing decisions taken by administrative agencies, it is the court's task to determine 1) whether the agency acted within the limits of its statutory powers; 2) whether the agency applied the relevant law correctly; 3) whether the agency's findings are supported by substantial evidence on the record; and 4) whether the agency has abused its discretion by acting in an arbitrary or capricious manner. *Perry v. Government Employees Service Commission,* 1981 U.S. Dist. LEXIS 9338, 18 V.I. 524 (D.C.V.I. 1981).

Furthermore, even though an administrative agency's construction of the statutes dealing with its area of administration is to be accorded great weight, conclusions of law by an agency will be upheld only if the agency has applied the relevant law correctly. *Commissiong v. GERS,* Memorandum Opinion dated October 9, 1998, Civ. No. 257/1995 (Terr. Ct., St. T.) [(*citing* from *Hosier v. Evans,* 314 F. Supp. 316, 8 V.I. 27 (D.V.I. 1970) *and Herbert v. Government Employees Service Commission,* 1985 U.S. Dist. LEXIS 12131, 21 V.I. 358 (D.V.I. 1985); *see also RE Hooper's Estate,* 359 F.2d 569 (3d Cir. 1966) (wherein the court held that where administrative action is taken without authority of law

or is contrary to law that purports to give that agency the authority to act, such action is deemed to be arbitrary and must be reversed on appeal)].

After carefully reviewing the Board's decision and the applicable law, this Court finds that GERS's decision must be reversed. In reaching its decision, not only did the Board exceed its scope of authority in failing to follow this Court's April 25, 1994 mandate, but also it fatally failed to apply the relevant law correctly. It has, moreover, become readily apparent on appeal that the court has also misconstrued relevant portions of the Early Retirement System Act in reaching its April 25, 1994 decision. Thus, before demonstrating that Villafane was eligible under the Act, we must commence by settling the applicable law.

## B. Applicable Law

In establishing the Virgin Islands Government Employees Retirement System the legislators specifically provided that it was created for:

> officials and employees of the Government of the United States Virgin Islands and for their dependents and beneficiaries, for the payment of retirement annuities, disability annuities, and other benefits ... after stated periods of service and upon fulfillment of certain conditions."

3 V.I.C. § 701(a)

The statute provides further:

> The purpose of such system is to encourage qualified personnel to enter and remain in the service of the Government of the Virgin Islands by establishing an orderly means whereby those who become superannuated or otherwise incapacitated as the result of age or disability, may be retired from service without prejudice and without inflicting a hardship upon the employees retired, and to enable such employees to accumulate reserves for themselves, their dependents and their beneficiaries, to provide for old age, death, disability and termination of employment, thus promoting economy and efficiency in the administration of government.

3 V.I.C. § 701(b).

In this case, the relevant provisions of the Act are set forth in Title 3, Section 705(d), of the Virgin Islands Code, which provides in pertinent part:

Any member who has completed thirty years of credited service may retire on a full service retirement annuity notwithstanding his age, without reduction of annuity. Additionally, ... a policeman, an eligible employee with the Virgin Islands Water and Power Authority, eligible employee working with chlorine, sewage, or carcinogens, fireman ...or corrections officer who has completed twenty (20) years of or more credited service as a policeman, eligible employee with the Virgin Islands Water and Power Authority, eligible employee working with chlorine, sewage, or carcinogens, fireman ... or corrections officer, *or combination thereof,* may retire notwithstanding his age without reduction of annuity.

3 V.I.C. § 705(d) (Emphasis added);

Section 702(x), which provides:

Eligible employee with the Virgin Islands Water and Power Authority" means any person employed by the Authority as a lineman or plant operator for a period of not less than five years as certified by the Executive Director of the Authority.

3 V.I.C. § 702(X);

and Section 702(y) providing:

Eligible employee working with chlorine, sewage or carcinogens" means any person employed by the Government of the United States Virgin Islands certified by such department's chief executive officer or his designee as having worked continuously and directly for a period of at least five years with chlorine, sewage or a carcinogens as defined by the *Second Annual Report on Carcinogens* published by the Public Health Service ....

3 V.I.C. § 702(y).

When drafting the early retirement statute, the legislators distinctively divided all eligible government employees for retirement, notwithstanding age and without reduction of annuity, into four classes. The first class is open to all government employees regardless of the department, division or agency, who may retire, according to § 705, (d) *upon completing thirty years of credited service.* The second eligible class, as defined in § 702, consisting only of those government

158

■■■■■■■■

employees working in services requiring performance of traditional "policeman," "prison guard" or "corrections officer," or "fireman" type duties, and those responsible for directing others to perform such duties; who, as set forth in § 705(d), *must complete 20 years of service in that type of "policeman," "fireman," "prison guard" or "corrections officer" work, or combination thereof* to qualify. The third eligible class consisting of any WAPA employee labeled as *"eligible employee with WAPA"* who, according to § 705(d), may retire upon working for *20 years credited service with WAPA, if certified for having served as either a lineman or plant operator, or combination thereof for a period of not less than five years by the Executive Director of the Authority as an "eligible employee with WAPA." See* 3 V.I.C. § 702(x). And the fourth eligible class open to any government employee regardless of the department, division or agency who is labeled as an *"eligible employee working with chlorine, sewage or carcinogen"* who may, according to § 705(d), retire upon working for *20 years credited service with the government, if certified* as an "eligible employee working with chlorine, sewage or carcinogen" *by the department's chief executive officer or his designee for having worked continuously and directly for a period of at least five years with chlorine, sewage, or carcinogens. See* 3 V.I.C. § 702(y).

Thus, both the "eligible employee with WAPA" or "eligible employee with chlorine, sewage, or carcinogens" classes (classes three and four respectively) have been deemed sufficiently hazardous so as to warrant retirement notwithstanding age without reduction of annuity after 20 years of credited service. In the case of a WAPA employee qualifying as an *"eligible employee with WAPA,"* he may retire after twenty years of service with WAPA, upon *certification* that he has *worked for a period of at least five years: as a WAPA lineman, or WAPA plant operator,* **or** *combination thereof.* In the case of any government employee qualifying as an *"eligible employee working with chlorine, sewage, or carcinogens,"* he may retire after twenty years of service with the government, upon *certification* that he has *worked for at least five years continuously and directly with chlorine, sewage, or carcinogens.* Contrarily, the second class (consisting of policeman, fireman, etc.) must continue to work in the same "policeman," "prison guard" or "corrections officer," or "fireman" position, or a combination thereof, for a period of 20 years to qualify for early retirement notwithstanding age without reduction of annuity.

159

Furthermore, in settling the applicable law of this case, we must also address whether the rules and regulations that the Board relied upon in denying Villafane his benefits are valid. The Board's powers are defined in Section 715(a):

> The responsibility for the proper operation of the System and for making effective the provisions of this chapter is vested in the Board of Trustees.

3 V.I.C. § 715(a).

Section 715(b) provides further:

> for making effective the provisions of this chapter, the Board shall adopt rules and regulations to govern its internal organization and functioning and shall approve and cause to be promulgated from time to time such other regulations as the Administrator may require for the proper and efficient administration of the System [GERS] according to the law.

3 V.I.C. § 715(b).

■ Hence, although the statute authorizes the Board to adopt rules and regulations and to add such other regulations deemed proper for the efficient administration of GERS, the statute distinctly restricts the Board to adopting rules and regulations which govern its internal organization and functioning and requires that they be in *accordance with the law.*

Indeed, it is has long since been established that no administrative agency having authority to prescribe rules and regulations may adopt rules that are in conflict with the basic law that gives it its authority. 3 Op. Atty. Gen. 61. Generally, great deference applies to rules and regulations, however, such deference is not absolute, and the judiciary must reject administrative constructions when the structure of a statute clearly reveals a legislative intent contrary to that practical construction. *Chemical Mnfrs. Assoc. v. Natural Resources Defense Council Inc.*, 470 U.S. 116, 84 L. Ed. 2d 90, 105 S. Ct. 1102. Additionally, an interpretation that enlarges or restricts the scope of the statute or alters the clearly expressed intent of the legislature must be rejected. 2 Am Jur2d Administrative Law § 88. Therefore, where a statute directly conflicts with the rules and regulations, it has been established that the statute unquestionably governs.

160

■ Here, GERS denied Villafane's application relying upon GERS' consultant's opinion, which basically second-guessed the certification of the Executive Director of WAPA. Although the Board asserts its authority to review such certifications directly from its rules and regulations, 3 V.I.C. sections 702(x) and (y) both, distinctly condition eligibility upon certification of the department's chief executive officer or his designee, in this case the Executive Director of WAPA. Therefore Rule 702-5-F, empowering the Board to make the final determination as to whether the certified position submitted is within the eligible class; Rule 702-5-I, providing that the Board at its own discretion may reopen classification of eligible employees under the Act; and finally, Rule 702-5-D requiring that certification (offered by the Department Head) shall state how much chlorine, sewage, or carcinogens is involved on a daily, weekly, monthly or yearly basis, all *directly conflict* with the clear language of § § 702(x) and (y) of the statute.

This conflict was recently addressed in *Commissiong v. GERS*, Memorandum Opinion dated October 9, 1998, Civ. No. 257/1995 (Terr. Ct., Div. St. T.). Wherein, Petitioner, a WAPA employee was similarly denied early retirement benefits under the Act premised upon GERS' consultant's opinion. The consultant had required WAPA "to submit more information about exposure based upon a daily, weekly, monthly and yearly basis as well as the 'specific' compounds or derivatives being used and in what fashion" in order for her to reach a decision about petitioner's eligibility. Despite certification by the Executive Director of WAPA that the applicant worked "continuously and directly" for the required five years with hazardous chemicals and thus that he qualified as an "eligible employee with chlorine, sewage, or carcinogens" under the Act. The court held that GERS may not vitiate such certifications. Moreover, in so holding it defined GERS' duty as ministerial and not discretionary, and concluded that once the Executive Director of WAPA makes a certification, GERS' only duty is to determine whether the applicant was employed the required number of years. *Id.* at 7.

Herein, as in *Commissiong*, GERS' denial hinged primarily upon its consultant's opinion that the Executive Director of WAPA's certification failed to be specific about exposure pursuant to Rule 702-5-D. Relying solely upon GERS' consultant's opinion, GERS vitiated the Executive Director's certification that Villafane had worked with PCB for more than the requisite five years in his position as a heavy equipment

161

operator, and mobile equipment operator. This was clearly contrary to the statute which vests such power to certify in the discretion of the department's chief executive. Moreover, the clear language of the statute requires no quantitative amounts, but simply that the department head certify that the government employee worked "continuously and directly" with the hazardous substance. Therefore this court will follow the decision in *Commissiong*, agreeing with the holding that since the statute explicitly vests the Executive Director of WAPA with that authority, any attempt by GERS, or its designee, to exercise such authority is contrary to law and void as a matter of law. *Id.* at 6. In so doing this court affirms that Rule 702-5-D is null and void, and likewise holds that Rules 702-5-F and 702-5-I being similarly contrary to the clear language of the statute are also null and void. *Id.* at 13. Where the legislature clearly does not empower GERS with the discretion to add factors that can result in arbitrary decisions as to who are eligible, this court cannot upon its own initiative confer upon GERS such power and thereby rewrite the purpose and exceed the scope of the law. *Id. See also Dixon v. United States,* 381 U.S. 68, 74, 85 S. Ct. 1301, 14 L. Ed. 2d 223 (1965); *Diersen v. Chicago Car Exchange, 110 F.3d 481,* cert. denied 522 U.S. 868, 118 S. Ct. 178, 139 L. Ed. 2d 119 (7th Cir. 1997); *and Byrd v. Raines,* 956 F. Supp. 25 (D.C. Cir. 1997).

## B. Analysis

### 1. Whether the Board was acting within the limits of its statutory powers when it made its decision

This Court has already clarified that the law only requires that Villafane show that he worked for at least five years with chlorine, sewage or carcinogen to qualify as an "eligible employee working with chlorine, sewage or carcinogen" in order to retire after his more than 23 years of credited service with WAPA. It is important to reiterate, however, that in its April 25, 1994 decision relying upon a more stringent standard for eligibility, this Court nonetheless found Villafane eligible since the Executive Director of WAPA had certified that Villafane had worked in a government position working with chlorine, sewage or carcinogen for at least 20 years, and the record was devoid of substantial evidence establishing the contrary. Therefore, discussion on whether the Board was acting within the limits of its statutory powers when it made

its decision is extremely relevant to manifesting that the Board's conduct was both arbitrary and capricious.

When this Court vacated the Board's 1992 decision in its memorandum opinion and order of April 25, 1994, the Board's power on remand had been expressly constrained. The Court had essentially held that that the record was devoid of substantial evidence upon which the Board could base its decision that Villafane was not an "eligible employee" working with hazardous substances for twenty (20) years or more pursuant to the provision of the Act and specifically remanded the case for the Board to enter an order consistent with the Court's holding that Villafane was entitled to early retirement benefits under the Act. The Court had also directed the Board to clarify for the record whether it had considered Villafane's additional years of service as lineman as certified by the Executive Director. By holding that Villafane was not eligible for enhanced early retirement benefits, the Board disregarded the Court's instructions, and thereby unequivocally usurped its mandated function. Evidently, the Board was not acting within its statutory bounds when it decided to deny Villafane enhanced retirement in direct contravention of this Court's April 25, 1994 Memorandum and Order. The Board not only unequivocally exceeded its statutory powers in its misconstruction of the law, but also by its deliberate rejection of this Court's mandate. As a result, the Board's decision was clearly arbitrary and capricious, and thus an abuse of the Board's discretion.

### 2. Whether Villafane qualifies as an "eligible employee" under the Act

Application of the law to the facts in this case, overwhelmingly demonstrates that Villafane qualifies as an "eligible employee working with chlorine, sewage, or carcinogens". As previously discussed, the Board based its denial on an erroneous assumption that Villafane must work for a period of at least 20 years in an 'eligible position', in order to be entitled for early retirement pursuant to § 705(d). However, this condition only pertains to the second class of government employees performing traditional duties such as "policeman," "prison guard" or "corrections officer," or "fireman," who must remain in the same service or combination thereof for at least 20 years for eligibility. Villafane's work during his employment with WAPA was of the nature categorized in the third and fourth classes, which only requires as a pre-condition to retirement after 20 years of credited service that Villafane qualify as an "eligible employee with WAPA "or an "eligible

163

employee working with chlorine, sewage, or carcinogens," as explicitly provided for in § 702(x) or (y) and § 705(d).

■ Accordingly, in order to qualify as an "eligible employee with WAPA" Villafane must have been certified as having worked for at least five years as a lineman or plant operator, or combination thereof. The Executive Director at WAPA only certified that Villafane worked as a lineman for four and one half years, which falls six months short of the five-year minimum requirement. Therefore, his years as a lineman do not qualify him as an "eligible employee with WAPA" under 702(x).

■ The evidence does, however, substantially show that Villafane qualifies as an "eligible employee working with chlorine, sewage, or carcinogens" under 702(y). The Executive Director of WAPA certified that Villafane worked "continuously and directly" with "PCB," as a heavy equipment operator for six years and seven months and a mobile equipment operator for twelve years and seven months. Thus, Villafane, having been certified as having worked for more than five years with a listed carcinogen in the *Second Annual Report on Carcinogens* published by Public Health Service, clearly qualified as an "eligible employee working with chlorine, sewage, or carcinogens". Additionally, the evidence presented at the November 10th hearing strongly supported the veracity of the certification.[16] Consequently, the evidence of record manifestly demonstrates that Villafane is entitled to retire notwithstanding his age without reduction of annuity having the requisite 20 years of credited service with WAPA as an "eligible employee working with chlorine, sewage, or carcinogens". And but for GERS' misconstruction of the law, WAPA's first certification (that he had worked while at WAPA for six years and seven months with "PCB" in his position as heavy equipment operator) would have been more than sufficient to establish his eligibility under the Act since he had more than the requisite 20 years of credited service with WAPA.

---

[16] The testimony of WAPA director Rodriguez and WAPA Supervisor Pinero Navarro, along with Villafane's own testimony, supported the Executive Director's certification that Villafane had worked directly and continuously with PCB during the course of his employment with WAPA. They testified that Villafane opened transformers containing PCB to change the leads for WAPA customers. They also established by their testimony that it was the custom for WAPA employees, including Villafane to put their hands directly in the transformer oil containing PCB without safety equipment in order to change the leads. More importantly, they testified that this was done within the scope of Villafane's employment as lineman, heavy equipment operator, and mobile equipment operator with WAPA.

## CONCLUSION

Because the Board erred in its interpretation of the law and the evidence of record more than substantially supports that Villafane undeniably qualifies under the Act, this Court will remand this case to the Board to grant Villafane his early retirement benefits notwithstanding his age without reduction of annuity. Moreover, in light of the Board's arbitrary and capricious conduct, the Board must grant Villafane his benefits retroactive to date of retirement and with interest.